# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 04-1148 & 04-1150

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

NORTHERN TRUST COMPANY, as trustee of
the Caterpillar Incorporated Master Trust
and the Inland Steel Industries Pension Trust,

*Defendant-Appellee.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 98 C 7272 & 98 C 8217—**James B. Moran**, *Judge.*

_____

ARGUED JUNE 8, 2004—DECIDED JUNE 22, 2004

_____

Before EASTERBROOK, KANNE, and DIANE P. WOOD,
*Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Closed-end mutual funds
pay federal income tax on income and capital gains, then
notify their investors, to which the tax burden passes
through. A shareholder that is tax exempt (such as a pen-
sion trust or a university endowment) can claim a refund of
the taxes that the mutual fund paid on account of its
proportionate investment. Taxable investors get income
coupled with a credit for tax the mutual fund has paid. Two
pension trusts (for employees of Inland Steel and Caterpil-

lar) were shareholders of record in Quest for Value Dual Purpose Fund, a closed-end mutual fund. Quest reported to Northern Trust Co., as trustee of these pension trusts, the gains and taxes attributable to these shares. Northern Trust then filed tax returns and claimed refunds on behalf of the pension funds. During 1991 through 1995, the tax years at issue in this litigation, Northern Trust received more than $6 million in refunds for the benefit of these pension plans.

The United States wants the money back. It contends that, with the permission of the two pension funds, Northern Trust "lent" the Quest shares to "borrowers" that held all economic incidents of ownership—the right to any dividends on the shares, the right to vote the shares, even the entitlement to sell them and keep the profits. If a borrower elected to return the shares at the end of the term, it retained any capital gain or loss. For this set of rights, it paid the pension funds 102% of the market price of the Quest shares on the date the "loans" were made. As the United States sees things, these transactions were sales carrying a misleading label designed to allow the pension funds to reap tax benefits on shares that they no longer owned—while the "borrowers," though taxable entitles, avoided the economic incidence of taxes on the mutual fund's undistributed income and capital gains.

These suits (one for each pension fund) were filed late in 1998, less than two years from the date the refund of 1995 taxes had been paid, but more than two after the refunds for the other tax years had been disbursed. Section 6532(b) of the Internal Revenue Code, 26 U.S.C. §6532(b), gives the United States only two years to commence proceedings to recover erroneously paid refunds, "except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." The complaint alleged that the five-year period applies

because Northern Trust misrepresented that the two pension trusts were Quest's "shareholders" and thus eligible for refunds. On Northern Trust's motion under Fed. R. Civ. P. 12(b)(6), the district court dismissed the complaint (with respect to tax years 1991 through 1994) for failure to state a claim on which relief may be granted. 93 F. Supp. 2d 903 (N.D. Ill. 2000). As the court saw things, status as a shareholder is a mixed question of law and fact, and thus not a "fact" as §6532(b) uses that term; and a "misrepresentation" occurs only if the taxpayer acts with a deceptive state of mind, which the complaint did not allege. Four years later the parties settled the United States' claim with respect to the 1995 tax year—Northern Trust eventually paid 100¢ on the dollar—and the district court entered a final judgment, from which the United States appealed.

Dismissal under Rule 12(b)(6) was irregular, for the statute of limitations is an affirmative defense. See Fed. R. Civ. P. 8(c). A complaint states a claim on which relief may be granted whether or not some defense is potentially available. This is why complaints need not anticipate and attempt to plead around defenses. See, e.g., *Gomez v. Toledo*, 446 U.S. 635 (1980); *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003). So it is irrelevant that the complaint did not plead that Northern Trust set out to deceive the Internal Revenue Service, or was negligent (or grossly negligent) in applying for refunds. Resolving defenses comes after the complaint stage. Even with respect to elements of the plaintiff's claim, complaints need not plead facts or legal theories. See, e.g., *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir. 1992).

"Misrepresentation" differs from "fraud;" otherwise §6532(b) would be redundant. Understandably, therefore, Northern Trust does not contend that the United States had to plead with particularity under Fed. R. Civ. P. 9(b). Yet if the normal approach of Rule 8(a) applies, this complaint is

unimpeachable. Indeed, it goes beyond what is necessary, for the complaint *does* anticipate the limitations defense and meet it with a claim that Northern Trust made a "misrepresentation of a material fact." What more could be required? If, as the district court believed, the word "misrepresentation" connotes a culpable state of mind, then the complaint *pleads* that state of mind by using the word "misrepresentation," for under Rule 9(b) "[m]alice, intent, knowledge, and other condition of mind . . . may be averred generally." And if, as the United States contends, negligent errors may be called "misrepresentations," again the complaint is sufficient. Instead of jettisoning the complaint, the district judge should have invited the parties to file motions for summary judgment or held a bench trial; then we would know what state of mind the persons who prepared these tax returns had, and we could determine whether that was enough under the statute. Precipitate dismissal of the complaint has prolonged this litigation needlessly.

There remains a possibility that this complaint contained too much rather than too little—that the United States has pleaded itself out of court by alleging things that, if true, devastate its claim. The complaint alleges that the "misrepresentation" was Northern Trust's statement that the pension funds were "shareholders" in Quest. The district court saw this as conclusive in defendant's favor, for status as a "shareholder" is not a "fact" but a legal characterization of facts. This is a subject we can address now, and we disagree with the district court's view that only the most concrete statements about the world are "facts" for purposes of §6532(b). The word "fact" is a staple of the legal system, and no one suggests that it has a special meaning in the Internal Revenue Code. There is no linguistic problem in saying that a characterization ("shareholder") derived from combining an undisclosed view of the law with undisclosed details about the terms of the "loan" is itself a "fact" (or a mixed question of law and fact, which is treated as a fact for

many purposes). "Facts" are not limited to those things that can be described by Newton's three laws of motion. Those case-specific details that serve as minor premises in the legal syllogism and thus determine the outcome are what we normally understand by "facts" (or "adjudicative facts") in the judicial process.

Consider some parallels. Is "discrimination" under Title VII a "fact"? Ascertaining the existence of "discrimination" requires the application of legal rules to events in the workplace (was someone of a different race promoted under similar circumstances?, and so on). The Supreme Court nonetheless held in *Pullman-Standard v. Swint*, 456 U.S. 273 (1982), that "discrimination" is a matter of fact for purposes of Fed. R. Civ. P. 52 and appellate review. We know from *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986), that a person's status as a "seaman" is an issue of fact, and from *National Collegiate Athletic Association v. University of Oklahoma*, 468 U.S. 85 (1984), that the definition of a "market" in antitrust law is an issue of fact. Why should the identification of a "shareholder" differ? All of these are characterizations arrived at by applying legal rules to events that may or may not be in dispute. If the district court articulates the wrong legal rule, it makes an error of law on the way to its finding of fact, but this does not render the characterization itself a proposition of "law."

One could see the same thing through the lens of defamation law. Suppose someone points a finger and shouts: "That man is a shareholder of Quest!" The statement could be defamatory if it implied disreputable conduct—if, for example, the person were a judge who had just rendered a decision in favor of Quest rather than recusing himself. Statements that imply propositions that can be true or false are statements of "fact" rather than "opinion" in tort law. See, e.g., *Stevens v. Tillman*, 855 F.2d 394 (7th Cir. 1988) (discussing this doctrine). The proposition "the Inland Steel Industries Pension Trust is a shareholder of Quest" implies

things that can be true or false—at a minimum, that the pension fund owned shares (as opposed to bonds or warrants) during the taxable year in question, and that it was the beneficial rather than bare legal owner of the shares (in other words, that it did not hold them as trustee, let alone as bailee, pledgee, or custodian). The United States contends, however, that the pension fund did *not* enjoy beneficial ownership in these shares. That may be true or false; and if the pension fund transferred beneficial ownership of the shares, then the statement that it remained a "shareholder" is a misrepresentation of fact. It is no different from the assertion "the Inland Steel Industries Pension Trust owns 100,000 shares of Quest" when as a result of sales and other transfers to third parties it owned only 10,000. That misstatement, which would increase the tax refund by an order of magnitude, would be one of fact.

Nothing else in the complaint had any potential to scuttle the claim. Thus we must remand. We have learned enough about §6532(b) to say that, when ruling on motions for summary judgment or holding a bench trial, the district court should not treat the word "misrepresentation" as limited to intentional deception. Only one appellate opinion to date has discussed that word's meaning. *Lane v. United States*, 286 F.3d 723 (4th Cir. 2002)—which considers and disapproves the district court's opinion in this litigation—holds that because "misrepresentation" appears in the same sentence as the word "fraud," it must mean some less culpable state of mind. The fourth circuit thought that gross negligence would do; we need not decide whether even that much is essential. One way to understand §6532(b) as a whole might be that, when the return discloses enough that all the IRS has to do is check the calculations and apply the law, then the period of limitations is two years; but if the IRS must independently discover facts that contradict the return, then it has an extra three years to do the legwork. Then if Northern Trust had represented that "the Inland

Steel Industries Pension Trust owns 100,000 shares of Quest" when it owned only 10,000, that statement would be a "misrepresentation" even if it was just a typographical error (the addition of an extra zero). The only way to identify such an error would be to ask the pension fund or Quest for original records, a step that may not occur even in an audit (itself a rare event). Many dictionaries define "misrepresentation" to include both intentional and inadvertent misstatements. Whether that is the best way to treat this word in this statutory context is a question that need not yet be answered, for the United States tells us that it is prepared to demonstrate that Northern Trust committed gross negligence, or worse. Only if it comes up short will it be necessary to pin down the word's meaning.

REVERSED AND REMANDED


A true Copy:

     Teste:


_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*