# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-2605

BARRY AVIATION INCORPORATED,

*Plaintiff-Appellant,*

*v.*

LAND O'LAKES MUNICIPAL AIRPORT
COMMISSION, TOWN OF LAND O'LAKES
WISCONSIN, RICHARD PETERSON, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 02 C 635—**Barbara B. Crabb**, *Chief Judge*

ARGUED JANUARY 16, 2004—DECIDED JULY 26, 2004

Before FLAUM, *Chief Judge*, RIPPLE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge.* Barry Aviation, Inc. filed a seven-count complaint against the defendants on November 22, 2002. The district court dismissed the counts based on 18 U.S.C. § 1961 and 42 U.S.C. § 1983 for failure to state a claim upon which relief could be granted. It then dismissed the

remaining five counts based on state law because it determined that Barry Aviation had failed to allege its state of incorporation and therefore had not alleged jurisdiction based on diversity of citizenship. The district court denied leave to amend the complaint because it concluded that the statute of limitations had expired for each claim. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

# I

# BACKGROUND

## A.  Facts[1]

Barry Aviation, Inc. operated as a "Fixed Base Operator" ("FBO") at the airport at Land O'Lakes, Wisconsin. FBOs "generally operate aircraft sales, rentals, charters, repair for airplanes and avionics, fuel services, and aircraft storage facilities at public airports." R.2 at 3. The defendants include the Town of Land O'Lakes, Wisconsin ("Town"), the Land O'Lakes Municipal Airport Commission ("Airport Commission"), and six individuals who were members of the Town Board or Airport Commission at various times during the relationship with Barry Aviation.

In 1993, Barry Aviation's principal, Timothy Barry, attended a public meeting with Karl Kerscher, the manager of the airport and head of the Land O'Lakes Airport Commission. Barry Aviation alleged that, during this meeting, the defendants presented substantial plans for the future redevelopment of the airport and represented that existing usage of

---

[1]  At this stage of the proceedings, we must accept as true the allegations of the complaint.

the airport was in excess of 10,000 Federal Aviation Administration ("FAA") defined "operations" per year.[2] To support their representations regarding the quantity of operations, the defendants provided Barry Aviation with records prepared by the FAA that purportedly were based on the Town's official certified records. One form, FAA Form OMB 2120-0015, confirmed the defendants' representation of 10,000 operations for the twelve-month period ending in September 1991. Barry Aviation also alleged that the Town and Airport Commission provided it with a "Project Statement" created by the defendants for the Wisconsin Department of Transportation ("WDOT") and the FAA as part of the Town's effort to obtain government funds. This document represented that the airport had 11,000 operations for the twelve-month period ending July 1993.

Based upon these materials and assurances, Barry Aviation entered into a multi-year contract as the airport's new FBO. Barry Aviation alleged that it complied with the contract, completing renovations, establishing a maintenance facility, purchasing numerous new planes, and establishing other services required by the agreement. In spite of its efforts, during the period between 1993 and 2001, Barry Aviation experienced "an unexpected and unprecedented low level of business." *Id.* ¶ 18. Barry Aviation brought its concern about the low level of business to the defendants' attention during this time. The defendants responded to the concerns by asserting that Barry Aviation's meager business levels were a result of its own actions, specifically its method of operation and its personnel, and also the seasonal nature of business due to the airport's location. At various times, the defendants reassured Barry Aviation that operations con-

---

[2] An "operation" refers to an arrival or a departure of an aircraft from an airport.

tinued to exceed 10,000 per year during 1991-1997. They provided Barry Aviation with a copy of a request for federal funds they made in 1997 and 1998. In that submission, the Commission and Town stated that their operations were 11,200 for the twelve-month period ending August 1997.

Because Barry Aviation's business levels were not consistent with the operations levels stated in these documents, it requested the underlying documents upon which the FAA and WDOT documents were based. It received, instead, the same materials it initially had received representing the operations level for 1991-92. However, in 2000, while cleaning a portion of the airport terminal basement controlled by the defendants, Barry Aviation fortuitously discovered an unmarked file cabinet with Commission and Town records. The "files contained the actual original operations log/records prepared by and kept by Defendants" from 1985 through 2000. *Id.* ¶ 25. Although seemingly important records, they were not stored in any public office. Upon examination, these files did not confirm the operation levels stated in the FAA, WDOT and other documents supplied earlier for Barry Aviation. Indeed, the files revealed that the stated operations levels were "over 2000% the actual amount of operations performed at the Airport in the relevant years." *Id.* After gaining permission to copy certain records, Barry Aviation returned the files to the defendants. In May of 2002, the file cabinet and uncopied materials disappeared and are unaccounted for at the present time.

## B. District Court Proceedings

The district court granted the defendants' motion to dismiss on May 16, 2003. It first addressed the Racketeer Influenced and Corrupt Organizations Act ("RICO") and § 1983 claims, which ultimately were based on fraud allegations. The court concluded that the underlying allegations

of fraud were not pleaded with the requisite particularity. In spite of this impediment, the district court also addressed and rejected both the due process and equal protection claims brought pursuant to § 1983. The court first determined that Barry Aviation waived its § 1983 claim based on a violation of equal protection because the "defendants raised a question in their brief about the existence of an equal protection claim," but Barry Aviation "said nothing in its responsive brief to explain how such a claim factor[ed] into its allegations." R.26 at 12. In addressing the due process claim, the court noted that Barry Aviation only advanced a denial of substantive due process, not procedural due process. The court found that Barry Aviation could not demonstrate that being free from the alleged fraud was a fundamental right deeply rooted in our history and traditions or implicit in the concept of ordered liberty; Barry Aviation also could not demonstrate " 'why having a state-law remedy for whatever injury the defendants caused [the plaintiff] is inadequate under the federal constitution.' " *Id.* at 14 (quoting *Khan v. Gallitano*, 180 F.3d 829, 835 (7th Cir. 1999)). Once the court dismissed the § 1983 claims, it also dismissed the RICO claim. The court noted that Barry Aviation could not "point to a single federal statute enumerated in RICO that provides the link to a predicate act of racketeering activity in this case." *Id.* at 16.

After dismissing both federal claims, the court determined that the plaintiff had failed to establish diversity jurisdiction. *See* 28 U.S.C. § 1332. In this respect, Barry Aviation's undoing was that it had pleaded only its principal place of business without also stating its state of incorporation. Its failure to plead this information, in spite of the fact the defendants pointed out this deficiency, caused the court to dismiss the state law claims for lack of jurisdiction.

Finally, the court refused to provide Barry Aviation leave to amend its complaint. The court determined from the

complaint that the statute of limitations had run as to both federal claims and that any amendment would be futile. The court held that RICO claims have a four-year statute of limitations and that § 1983 utilized a six-year limit. The court then noted that the complaint alleged that the defendants fraudulently had induced Barry Aviation to enter a contract in 1993. At the same time, continued the court, Barry Aviation admitted in its complaint that it had "suffered 'an unexpected and unprecedented low level of business' during the years '1993 through 2001' and that it [had] brought these 'material deviations from the operations' to the attention of 'defendants' at 'various times' during" 1993-2001. *Id.* at 17-18 (quoting R.2 ¶ 18). Reading these allegations in their totality, the court determined that the "plaintiff knew and reported these 'material deviations from the operations' to defendant[s] as early as 1993." *Id.* at 18. Therefore, the court concluded, Barry Aviation's claims expired in 1997 and 1999. Because Barry Aviation did not file its claims until November 22, 2002, it was outside the limitations period.

## II

## DISCUSSION

Barry Aviation submits that its claims were filed in a timely manner. In its view, the defendants' concealment of necessary documents prevented the discovery of injuries until 2000, when it found the file cabinet and airport records. Barry Aviation claims that the district court therefore should not have relied on the limitations period as the ground for refusing leave to amend its complaint. The district court's denial of leave to amend a complaint is reviewed for an abuse of discretion. *See Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 925-26 (7th Cir. 2003).

## A.  Standard for Granting Leave To Amend

Leave to amend a complaint should "be freely given when justice so requires." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). That leave be "freely given" is especially advisable when such permission is sought after the dismissal of the first complaint. Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.[3] One treatise has explained succinctly the reason for this approach:

---

[3]   *See Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 230 (7th Cir. 1995) (reversing the denial of leave to amend because the record was not clear that the plaintiff could state no set of facts upon which relief can be granted); *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978) ("The permission to amend a complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim upon which relief can be granted."); *Austin v. House of Vision, Inc.*, 385 F.2d 171, 172 (7th Cir. 1967) (per curiam) (reversing the denial of leave to file a second amended complaint and noting that whether a cause of action will state a claim cannot be determined until the amended complaint is filed and tested); *see also Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."); *cf. Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) ("A district court does not abuse its discretion in denying leave to amend if the proposed repleading would be futile . . . .").

> The federal rule policy of deciding cases on the basis of
> the substantive rights involved rather than on technical-
> ities requires that plaintiff be given every opportunity
> to cure a formal defect in his pleading. This is true even
> though the court doubts that plaintiff will be able to
> overcome the defects in his initial pleading. Amend-
> ment should be refused only if it appears to a certainty
> that plaintiff cannot state a claim. The better practice is
> to allow at least one amendment regardless of how un-
> promising the initial pleading appears because except in
> unusual circumstances it is unlikely that the court will
> be able to determine conclusively on the face of a
> defective pleading whether plaintiff actually can state a
> claim.

5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990) (internal footnotes omitted).

### B. Statute of Limitations

Neither party disputes the district court's implementation of a four-year limitations period for the RICO claim and a six-year period for the § 1983 claim. Rather, the dispute centers on whether those periods should be deemed to have expired under the circumstances here. We conclude that, on the basis of this complaint, standing alone, the district court should not have determined that the statute of limitations necessarily barred these actions.

We begin with the basic rule that the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and need not be addressed in the complaint. *See U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). As we have stated recently, "[a] complaint states a claim on which relief may be granted whether or not some defense is

potentially available." *United States v. N. Trust Co.,* Nos. 04-1148 & 04-1150, 2004 WL 1381706 (7th Cir. June 22, 2004). Complaints need not anticipate defenses; the resolution of the statute of limitations comes after the complaint stage. *See id.* (citing *Gomez v. Toledo,* 446 U.S. 635 (1980)).

This general rule is subject to an important exception. The statute of limitations issue may be resolved definitively on the face of the complaint when the plaintiff pleads too much and admits definitively that the applicable limitations period has expired. *See id.; Gypsum,* 350 F.3d at 626. "A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense . . . ." *Gypsum,* 350 F.3d at 626. Therefore, we must determine whether Barry Aviation has pleaded itself out of court in the allegations of the complaint.

### 1.

For both RICO claims and § 1983 claims, a cause of action accrues when the plaintiff knew or should have known that it had sustained an injury.[4] This rule is referred to as the discovery rule because the accrual date is not determined when the injury occurs but when it is discovered or should have been discovered. *See Cada* v. *Baxter Healthcare,* 920 F.2d 446, 450 (7th Cir. 1990). In *Cada,* the court explained that, to the extent that defendants in a fraud case conceal the fraud, "they postpone the date of accrual by preventing the plaintiff from discovering that he is a victim of a fraud." *Id.* at

---

[4] *See McCool v. Strata Oil* Co., 972 F.2d 1452, 1460 (7th Cir. 1992) (RICO); *Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir. 1993) (noting that a § 1983 claim accrues when the plaintiff knew or should have know his or her constitutional rights had been violated).

451. This principle is based on the general rule that accrual occurs when the plaintiff discovers that "he has been *injured* and who *caused* the injury." *United States v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000). In *Cada*, we relied on *Jensen v. Snellings*, 841 F.2d 600 (5th Cir. 1988), in which our colleagues in the Fifth Circuit wrote that "the limitations period applicable to a cause of action for fraud . . . does not begin to run until the plaintiff discovers, or in the exercise of reasonable diligence should discover, the alleged *fraudulent* conduct." *Snellings*, 841 F.2d at 606 (emphasis added); *see also Martin v. Consultants & Admins., Inc.*, 966 F.2d 1078, 1094 n.17 (7th Cir. 1992) (describing *Cada* as holding that self-concealing frauds do not extend the limitations period through equitable tolling but, instead, postpone the date of accrual by preventing the plaintiff from discovering he is a victim of a fraud).

The complaint in this case can be read fairly as alleging that Barry Aviation became aware gradually of the possibility of injury as business levels continued to fall short of anticipated goals. At some point, no doubt, a reasonable person would have investigated whether this disappointing business pattern was the product of fraudulent misrepresentations by the defendants, but the complaint before us does not preclude the possibility that this date was within the applicable statute of limitations.

### 2.

Moreover, the complaint also can be read to allege that, when Barry Aviation did make an inquiry about the representations that had induced it to undertake the business arrangement, the defendants took additional affirmative steps to prevent or at least defer it from learning of the misrepresentations. "Equitable estoppel suspends the running of the statute of limitations during any period in which

the defendant took active steps to prevent the plaintiff from suing . . . ." *Singletary v. Cont'l Illinois Nat. Bank & Trust Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993). Among those steps can be the defendants' "concealing evidence from the plaintiff that he needed in order to determine that he had a claim." *Id.*; *see also Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 394 (7th Cir. 2000) ("Active steps triggering equitable estoppel include hiding evidence . . . ."); *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 506 (7th Cir. 1999) ("[A] defendant who conceals vital information about the existence of a plaintiff's claim or makes representations to the plaintiff causing it to delay bringing the claim, can be estopped from relying on the statute of limitations as a defense."). Affirmative effort to prevent the plaintiff from suing—above the defendant's mere denial of liability—is what is required. *See Singletary*, 9 F.3d at 1241; *see also Cada*, 920 F.2d at 451; *Davenport v. A.C. Davenport & Son Co.*, 903 F.2d 1139, 1142 (7th Cir. 1990) (noting that to qualify as active concealment of fraud the plaintiff must show that the defendants "took additional affirmative steps after committing the fraud to keep it concealed"). Of course, the additional conduct must have been the cause of the plaintiff's failure to sue on time. *See Chapple*, 178 F.3d at 507. In *Cada*, we gave as an example an employer's providing forged documents to "negate any basis for supposing that [the employee's] termination was related to his age" after the employer had used age improperly to terminate an employee. *Cada*, 920 F.2d at 451. In short, there must be an additional affirmative effort to delay the suit, and that effort must have caused the plaintiff's delay.

The complaint in this case set forth facts that are consistent with the doctrine of equitable estoppel. For example, the complaint mentions that, when the plaintiff expressed its "unexpected" low level of business, the defendants replied to those concerns with additional fraudulent documents.

When Barry Aviation made inquiries about the operations levels, the defendants did not merely deny their earlier misrepresentations but presented documents purporting to show these fictitious levels continued in subsequent years, through 1997-98. The plaintiff produced these new fraudulent documents and claimed that any unexpected low levels of business were Barry Aviation's fault rather than any result of low operations levels. Further inquiry may establish that, because of these additional acts, Barry Aviation was not aware of the pertinent facts that would form the basis of a fraud claim. *See Chakonas v. City of Chicago*, 42 F.3d 1132, 1136 (7th Cir. 1994).

The complaint sets forth facts that demonstrate Barry Aviation could establish that the defendants "conceal[ed] evidence from the plaintiff that [it] needed in order to determine that [it] had a claim." *Singletary*, 9 F.3d at 1241; *see Cada*, 920 F.2d at 451; *Jackson*, 213 F.3d at 396 (affirming the denial of an equitable estoppel claim because the defendant's statement was not a "misstatement and was not likely to hide discrimination"). The defendants' concealment of evidence, production of additional false documents and diversionary explanations that the problems were the plaintiff's own doing all combined to keep the plaintiff from suing when it was first injured. If Barry Aviation were to demonstrate reasonable reliance on these assurances, it will have established that it can rely upon equitable estoppel.

Because leave to amend should be freely given and only denied after a motion to dismiss where "it appears to a certainty that the plaintiff cannot state a claim upon which relief can be granted," *Rohler*, 576 F.2d at 1266, we must conclude that the district court improperly denied leave to amend.

## Conclusion

For the foregoing reasons, we reverse the decision of the district court. The case is remanded for proceedings consistent with this opinion.

REVERSED and REMANDED


A true Copy:

     Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*