In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3037

CHICAGO BUILDING DESIGN, P.C.,
and JEREMIAH JOHNSON,

*Plaintiffs-Appellants*,

*v.*

MONGOLIAN HOUSE, INC.,
RYAN GOLDEN, MARK PERRES,
and JOHN A. WILSON,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 12 C 1010 — **Elaine E. Bucklo**, *Judge*.

ARGUED FEBRUARY 13, 2013 — DECIDED OCTOBER 23, 2014

Before BAUER, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. This case involves claims of copyright infringement arising out of a failed business relationship between a Chicago architectural firm and its client. Chicago Building Design, P.C. ("CBD"), specializes in the design and construction of restaurants. Its client, Mongolian House, Inc.,

wanted to renovate an upscale restaurant in Chicago known as "Plan B." CBD designed the interior of the restaurant and in June 2006 filed blueprints with the City of Chicago to obtain a "repair and replace" building permit for the project. Mongolian House retained CBD to do the construction work, and the firm completed the renovations in 2007.

Sometime in 2008 a CBD employee visited the City's offices on other business and chanced upon a set of blueprints for Plan B that appeared to be copies of the firm's designs but were labeled with another architect's name. CBD asked the City for a copy of the blueprints to determine if they were in fact copies of its own. The City denied the request, saying the blueprints were exempt from disclosure. In the meantime, Mongolian House defaulted on payments due CBD for the 2006–2007 work. On May 8, 2009, the City issued a new building permit for Plan B based on the 2008 blueprints. On February 13, 2012—not quite three years later—CBD sued Mongolian House, its owners, and its architect alleging copyright infringement and assorted state-law claims.

The defendants moved to dismiss the federal claims as time-barred under the Copyright Act's three-year statute of limitations. *See* 17 U.S.C. § 507(b). The district court granted the motion, holding that CBD was on "inquiry notice" of a possible copyright violation when its employee happened upon the 2008 blueprints at the City's offices, which occurred not later than December 31, 2008. The limitations clock started to run on that date, the court held, even though CBD was unable to discover whether the 2008 blueprints infringed its copyright. The court also rejected CBD's alternative argument under the

"continuing violation" doctrine, holding that CBD failed to allege acts of infringement within the limitations period. The court relinquished jurisdiction over the state-law claims, and CBD appealed.

We reverse. The Supreme Court recently clarified that the Copyright Act's statute of limitations establishes a "separate accrual rule" so that "each infringing act starts a new limitations period." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014). CBD's complaint alleges potentially infringing acts that occurred within the three-year look-back period from the date of suit, so the case should not have been dismissed. To the extent that CBD seeks recovery for earlier infringing acts, the issue may have to be revisited on remand in light of *Petrella*.

## I. Background

The plaintiffs are Chicago Building Design, P.C., an architectural and construction firm, and Jeremiah Johnson, its president. We refer to them collectively as "CBD" unless the context requires otherwise. The defendants are Mongolian House, Inc., a restaurant company; Ryan Golden and Mark Perres, its owners; and John A. Wilson, its outside architect. We refer to the defendants collectively as "Mongolian House" unless it's necessary to distinguish between them. The case was dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, so we take the following facts from the latest iteration of the complaint, accept them as true, and draw reasonable inferences in CBD's favor. *Larson v. United Healthcare Ins., Inc.*, 723 F.3d 905, 908 (7th Cir. 2011).

In 2006 Mongolian House retained CBD to design Plan B, an upscale restaurant in Chicago that it sought to renovate. Mongolian House promised to pay CBD $15,000 for architectural services. After receiving CBD's design, Mongolian House awarded the firm the corresponding construction work. Under the construction contract, Mongolian House promised to compensate CBD in two ways: a cash payment of $259,100, plus 15% of the profits earned by Plan B.

In June 2006 CBD filed blueprints for the Plan B renovation with the City in order to obtain a "repair and replace" building permit for the project. The City issued the permit authorizing the work to begin, and CBD completed the renovation in March 2007. CBD registered its copyright in the blueprints on May 1, 2009.

The complaint alleges that sometime in 2008, Golden and Perres, Mongolian House's owners, copied CBD's blueprints and distributed them to Wilson, who placed his name on the copies and filed them with the City with the intention of passing the blueprints off as his own. The purpose was to obtain a "full" building permit for Plan B. In contrast to a "repair and replace" permit, a "full" permit authorizes certain additional interior alterations and an increase in occupancy on the premises. On May 8, 2009, the City issued the full permit, and in accordance with customary practice, distributed two copies of the approved 2008 blueprints to Mongolian House. To comply with the City's regulations, Mongolian House was required keep the blueprints on the premises. Golden, Perres, and Wilson thereafter used the infringing blueprints to pass an

inspection on or about July 27, 2009, and used them again in other periodic inspections through January 2012.

Sometime in 2008, a CBD employee visited the City's offices on unrelated zoning business and happened to see documents that looked like the firm's blueprints but bore Wilson's name. At this point CBD "did not know … whether the Blueprints were the ones Plaintiffs filed with the City of Chicago to secure a repair and replace permit for the Premises, some modified version of the Blueprints submitted for other purposes, or a wholly different non-infringing set of blueprints copyrighted by Wilson." To get more information, CBD filed a complaint with the Illinois Department of Financial and Professional Regulation, which responded by letter explaining that it may open an investigation. CBD next asked the City's Buildings Department for a copy of the 2008 blueprints under the Illinois Freedom of Information Act. The Department responded that the blueprints were exempt from disclosure. Finally, CBD periodically consulted Chicago's Building Data Warehouse Report, in which the City announces the issuance of building permits. CBD reviewed the May 8, 2009 report and learned that the City issued a building permit that day based on the 2008 blueprints Wilson had submitted.

Meanwhile, Mongolian House defaulted on payments due CBD under the parties' contracts. To date, Mongolian House has paid CBD $11,000 on the design contract and just $45,000 on the construction contract.

On February 13, 2012, CBD sued Mongolian House, Golden, Perres, and Wilson alleging various forms of copyright infringement under the Copyright Act. *See* 17 U.S.C. §§ 101

*et seq.* The infringement allegations cluster into the following categories: (1) when Golden and Perres copied the original blueprints without authorization, they violated CBD's exclusive right to copy, *see id.* § 106(1); (2) when they gave the blueprints to Wilson, they violated CBD's exclusive right to distribute, *see id.* § 106(3); (3) when Wilson put his name on the blueprints to pass them off as his own, he violated CBD's exclusive right to create derivative works, *see id.* § 106(2); and (4) when the defendants used the infringing blueprints to pass periodic city inspections, they again violated CBD's exclusive right to distribute, *see id.* § 106(3). The complaint also alleged state-law claims based on Mongolian House's failure to pay what it owed CBD for design and construction work.

The defendants moved to dismiss the copyright claims under Rule 12(b)(6), invoking the Copyright Act's three-year statute of limitations. *See* § 507(b). The district court granted the motion, holding that CBD was on "inquiry notice" of a possible violation of its rights when its employee visited the City's offices on other business and "saw the blueprints, which happened no later than Dec. 31, 2008." The limitations period began to run on that date, the judge concluded, and this was so even though CBD "could not at that time verify that infringement had occurred." Starting the limitations clock on that date meant that CBD's suit—filed on February 13, 2012— was about six weeks too late.

CBD argued in the alternative that the infringing acts constituted a "continuing violation" that extended into the three-year limitations period. The judge rejected this argument as well, holding that the "post-2008 acts" did not amount to

infringement because distributing an architectural work to a building inspector is a "limited publication" not covered by the Copyright Act.

Having dismissed the copyright claims, the court relinquished jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3). The court entered final judgment, and this appeal followed.

## II. Discussion

When a defendant charges noncompliance with the statute of limitations, "[d]ismissal under Rule 12(b)(6) [is] irregular, for the statute of limitations is an affirmative defense." *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Because "complaints need not anticipate and attempt to plead around defenses," *id.*, a motion to dismiss based on failure to comply with the statute of limitations should be granted only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). In other words, the plaintiff must affirmatively plead himself out of court; the complaint must "plainly reveal[] that [the] action is untimely under the governing statute of limitations." *Id*. We review de novo a district court's decision to dismiss a complaint on statute-of-limitations grounds. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."

§ 507(b). Our circuit recognizes a discovery rule in copyright cases: "[T]he copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004); *see also Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983). As this case originally came to us, the parties' dispute centered on the proper application of the discovery rule to the facts alleged in CBD's complaint. But the Supreme Court's recent decision in *Petrella* casts the limitations question in quite a different light.

The issue in *Petrella* was "whether the equitable defense of laches … may bar relief on a copyright infringement claim brought within § 507(b)'s three-year limitations period." 134 S. Ct. at 1967. To answer that question, the Court first examined "how the Copyright Act's limitations period works" and "when a copyright infringement claim accrues." *Id.* at 1969. This part of *Petrella* affects the analysis here.

The Court began its opinion in *Petrella* by noting the generally applicable rule of accrual in limitations law: A cause of action accrues, and the limitations period begins to run, "when [a] plaintiff has a complete and present cause of action." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferber Corp. of Cal.*, 522 U.S. 192, 201 (1997) (alteration in original)). For copyright cases in particular, the Court explained that an infringement claim accrues "when an infringing act occurs." *Id.* More specifically, the Court held that the Copyright Act's statute of limitations establishes a "separate accrual rule" for each violation:

> Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Id.* (footnote & citation omitted). Put more succinctly, § 507(b) prescribes "a three-year look-back limitations period for all civil claims arising under the Copyright Act." *Id.* at 1968.

In an important footnote with potential implications for this case, the Court noted that although copyright claims generally accrue when the infringing act occurs, most circuits "have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for his claim.'" *Id.* at 1969 n.4 (quoting *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009)). The Court did not comment further on the subject, but simply observed that it had not yet had an opportunity to "pass[] on the question" of discovery accrual in copyright cases. *Id.*

The Court did, however, specifically distinguish the separate-accrual rule established in § 507(b) from the "continuing violation" doctrine: "Separately accruing harm should not be confused with harm from past violations that are continuing." *Id.* at 1969 n.6; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–121 (202) (distinguishing between discrete

acts of employment discrimination, each of which is individually actionable, and conduct that is continuing and "cumulative in effect," like a claim of hostile work environment). We take the Court's statement to mean that the continuing-violation doctrine does not apply in this context.

That understanding is confirmed by the Court's summary of this part of its opinion:

> Under the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. *See* 3 M. Nimmer & D. Nimmer, Copyright § 12.05[B][1][b], p. 12–150.4 (2013) ("If infringement occurred within three years prior to filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously"). Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

*Petrella*, 134 S. Ct. at 1969–70 (footnote omitted).

*Petrella* significantly changes the focus of analysis in this case. As the parties framed the issue, the dispute hinges on the

start date for the statute of limitations—more particularly, the date on which CBD either actually or "constructively" discovered the copyright infringement. Actual discovery is just what it sounds like; "constructive" discovery refers to the date on which CBD as a reasonably diligent plaintiff should have discovered that the defendants were violating its rights. *See Gaiman*, 360 F.3d at 653. The district court held that the statute of limitations began to run when CBD had "inquiry notice," i.e., knowledge that would have led a reasonable person to start investigating the possibility that his rights had been violated.

But "inquiry notice" is not the same as actual or constructive discovery. In another context, the Supreme Court has explained that when a limitations period is keyed to the plaintiff's discovery of his injury, "inquiry notice" does not start the limitations clock. *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 651–53 (2010). In *Merck* the Court was asked to interpret the statute of limitations for securities fraud, 28 U.S.C. § 1658(b)(1), which provides in relevant part that an action for securities fraud must be brought "not later than … 2 years after the discovery of the facts constituting the violation." Some circuits had equated "discovery" with "inquiry notice," i.e., "the point at which a plaintiff possesses a quantum of information sufficiently suggestive of wrongdoing that he should conduct a further inquiry" *Merck*, 559 U.S. at 650 (internal quotation marks omitted). The Court firmly rejected that understanding of "discovery":

> We conclude that the limitations period in
> § 1658(b)(1) begins to run once the plaintiff did

discover or a reasonably diligent plaintiff would have "discover[ed] the facts constituting the violation"—whichever comes first. In determining the time at which "discovery" of those "facts" occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation" … irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.

*Id.* at 653.

*Merck* involved a statutory discovery rule; in copyright cases the discovery rule is a common-law gloss. Still, *Merck* clarified that "inquiry notice" is not a substitute for actual or constructive discovery, and that clarification is instructive here. The concept of inquiry notice may help to identify the time at which a reasonable plaintiff can be expected to start investigating a possible violation of his rights, but it does not itself trigger the statute of limitations. Accordingly, the district court should not have used inquiry notice as the starting date for the statute of limitations.

More fundamentally, however, in light of *Petrella*, we now know that the right question to ask in copyright cases is whether the complaint contains allegations of infringing acts

that occurred within the three-year look-back period from the date on which the suit was filed. Here, the answer to that question is plainly "yes." The complaint alleges that Perres, Golden, and Wilson distributed the infringing blueprints to building inspectors during inspections in July 2009 and periodically thereafter, through January 2012. These acts fall within the three-year limitations period from the date of suit (February 13, 2012).

Mongolian House argues that these "post-2008 acts" do not constitute copyright infringement because distributing an architectural work to building inspectors is a "limited publication" that falls outside the Copyright Act. Mongolian House advances this argument in response to CBD's fallback position that the infringement alleged here should be construed as a continuous violation that stretched into the limitations period. As we have explained, however, the "continuing violation" doctrine is incompatible with the separate-accrual rule of § 507(b), so CBD's alternative argument is no longer in the picture.

To the extent that the "limited publication" argument is addressed to the merits rather than the statute of limitations, it was misapplied here. The "limited publication" concept was developed under the copyright regime that existed between 1909 and 1978, when copyright was governed by both the federal Copyright Act of 1909 and state common law. *See* JANE C. GINSBURG & ROBERT A. GORMAN, COPYRIGHT LAW 108–09 (2012). At common law and under the 1909 Act, an author's ability to enforce his rights in a work depended in part on whether the work was published, whether it was marked

with a copyright notice, and whether the copyright was registered. *Id.* The Copyright Act of 1976 abolished state copyright law and changed the rules governing the effect of registration and publication on the author's rights and remedies under the Act. *Id.* at 114–15.

Because the way in which an author published his work affected his rights and remedies under both the old and new copyright regimes, some courts developed the concept of "limited publication" to mitigate some of the harsher effects of these rules. *Id.* at 109; *see also* 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8.11[C][1] (2014). The basic idea is that an author doesn't surrender rights in a work simply by sharing it with a small group of people for limited purposes. *See* GINSBURG & GORMAN, *supra*, at 109. The cases Mongolian House cites for the limited-publication principle are of this type; they hold that an author's publication of his work to a limited group for a limited purpose (for example, "publishing" an architectural work to building inspectors) does not forfeit his rights. *See, e.g.*, *Data Cash Sys., Inc. v. JS&A Grp., Inc.*, 628 F.2d 1038 (7th Cir. 1980); *McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069 (E.D. Cal. 2009); *Kunycia v. Melville Realty Co.*, 755 F. Supp. 566 (S.D.N.Y. 1990); *Intown Enters., Inc. v. Barnes*, 721 F. Supp. 1263 (N.D. Ga. 1989); *Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Const. Co.*, 542 F. Supp. 252 (D. Neb. 1982); *Kisling v. Rothschild*, 388 So. 2d 1310 (Fla. Dist. Ct. App. 1980).

So the limited-publication principle protects authors against a forfeiture of their rights. But it's not at all clear what bearing it has on the question of infringement. Mongolian House has

not explained how the principle applies to *its own* conduct as an accused infringer or provides a defense to copyright liability.

The Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer." 17 U.S.C. § 501(a). As relevant here, the exclusive rights of the copyright owner include the following:

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based on the copyrighted work; [and]
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]

*Id.* § 106.

The complaint alleges that Golden, Perres, and Wilson distributed the infringing blueprints to city building inspectors at periodic inspections from July 2009 through January 2012, in violation of CBD's rights under § 106(3). These acts occurred within the three-year look-back period from the date of suit and are at least potentially actionable. Mongolian House has not developed a substantive argument that these post-2008 acts do not qualify as acts of infringement based on the text of the statute, though we can certainly envision one. A copyright owner has the exclusive right to distribute his work "to the public by sale or other transfer of ownership, or by rental, lease, or lending." *Id.* § 106(3). It's an open question whether

distributing an unlawfully copied architectural work to a
building inspector qualifies as a violation of the author's
exclusive right to distribute his work "*to the public by sale or
other transfer of ownership, or by rental, lease, or lending.*"

As far as we can tell, this is a question of first impression in
this circuit and apparently in other circuits as well. As a more
general matter, the scope of the exclusive right to distribute
under § 106(3) is a difficult issue on which courts have dis-
agreed.[1] *See generally* 2 NIMMER & NIMMER, *supra*, § 8.11[C][1].
Mongolian House's argument on this point is at best underde-
veloped. The proper scope of § 106(3)'s exclusive right to
distribute has implications far beyond this case; it would be
imprudent for us to venture an opinion based on inadequate
briefing. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)
("Perfunctory and undeveloped arguments … are waived."
(internal quotation marks omitted)).

The most we can say at this juncture is that the case should
not have been dismissed on the pleadings based on the statute

---

[1] "Distribute" is not a defined term in the Copyright Act, but the language
of 17 U.S.C. § 106(3) is almost identical to the Act's definition of "publica-
tion." *See* 17 U.S.C. § 101. There is support both for and against reading the
two terms as coextensive. *See generally* 2 MELVILLE B. NIMMER & DAVID
NIMMER, NIMMER ON COPYRIGHT § 8.11[C][1] (2014) (collecting legislative
history and cases). The district court stated that "[t]he Seventh Circuit has
held that [the] right of distribution in the Copyright Act is synonymous
with the right of publication." That was a mistake. The court cited *Kennedy
v. National Juvenile Detention Ass'n*, 187 F.3d 690, 697 (7th Cir. 1999), as
support for this proposition, but the cited passage actually appears in a
partial dissent. As we've noted, the merits question here is one of first
impression in this circuit.

of limitations. CBD's complaint alleges that the defendants committed infringing acts within the three-year look-back period before suit. The limited-publication principle does not take these acts outside the Act as a categorical matter. The case can move forward, though much remains for further development, both legally and factually.

A final word on the statute-of-limitations: If on remand CBD continues to claim a right to recover for infringing acts that occurred in 2008, outside the three-year look-back period, the parties will need to address whether *Petrella* abrogates the discovery rule in copyright cases. We express no opinion on that question today. The parties have not briefed it,[2] and it may not arise on remand. We note that CBD seeks statutory damages in lieu of actual damages; an award of statutory damages is cumulative in nature, covering "all infringements involved in the action, with respect to any one work." 17 U.S.C. § 504(c)(1). So *Petrella*'s effect on the discovery rule may not need to be decided in this case. We leave that matter to be sorted out on remand.

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.

---

[2] Neither side filed a Rule 28(j) letter regarding the effect of *Petrella* on this case. *See* FED. R. APP. P. 28(j).