NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2019
Decided December 4, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-2590

| | |
|---|---|
| MATTHEW FLYNN and STEVEN PIRRO, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiffs-Appellants*, | |
| *v.* | No. 18 C 502 |
| KAREN DONNELLY, et al. | Gary Feinerman, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Matthew Flynn and Steven Pirro defeated felony drug charges when the Illinois courts quashed the evidence against them because the special law enforcement unit that arrested them was illegitimate. In the wake of those decisions, Flynn and Pirro sued in federal court under 42 U.S.C. § 1983, but the district court dismissed their complaint because the statute of limitations had run and because the complaint did not state a federal claim. The appellants challenge only the court's decision on timeliness, but their arguments are mistaken, so we affirm.

## Background

In 2012, the office of the LaSalle County State's Attorney formed the State's Attorney Felony Enforcement unit ("SAFE") under Section 3-9005(b) of the Illinois Counties Code, which authorizes the appointment of special investigators to assist with prosecutorial duties. The SAFE unit was staffed with civilians (mostly former law enforcement officers), tasked with drug interdiction, and equipped to make traffic stops and arrests. In early 2013, the same SAFE officer pulled over, searched, and arrested each plaintiff: Pirro in January and Flynn in March. Before their trials, Pirro and Flynn each moved to quash his arrest and suppress the evidence against him, arguing that the officer, Jeffrey Gaither, lacked the proper credentials to conduct law enforcement because he had not complied with the fingerprint or background checks that § 3-9005(b) requires. The trial courts granted the motions and released Pirro and Flynn on bond.

The State appealed in both Pirro's and Flynn's cases. Those appeals were consolidated with numerous other cases involving arrests by Gaither. *See People v. Ringland*, 33 N.E.3d 1020 (Ill. App. Ct. 2015). In June 2015 the Illinois Appellate Court affirmed the trial court on broader grounds, concluding that 55 ILCS 5/3-9005(b) authorized the State's Attorney to appoint special investigators for the limited purposes of serving subpoenas, making return of process, and investigating pending cases but did not authorize the SAFE officers to patrol highways, conduct traffic stops, or make arrests. *See id.* at 1029. In other words, the SAFE unit was operating outside its statutory authority. Two years later, the Illinois Supreme Court affirmed the appellate court in *People v. Ringland*, 89 N.E.3d 735 (Ill. 2017), concluding that the SAFE unit was not authorized by 55 ILCS 5/3-9005(b); it did not address whether the unit was constitutional. In the wake of the *Ringland* decision, the State dismissed the charges against Pirro and Flynn.

In January 2018, Flynn and Pirro filed this lawsuit under 42 U.S.C. § 1983 against the SAFE officers involved in their arrests as well as the former and current State's Attorneys of LaSalle County for their roles in creating and operating the SAFE unit. The complaint stated that because the SAFE officers lacked "legal authority" to stop, search, arrest, and detain them (or anyone), those acts violated Pirro and Flynn's Fourth Amendment right to be free from "illegal" searches and seizures and their Fourteenth Amendment right to travel.

The defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the two-year statute of limitations had run and that the

plaintiffs failed to state a claim under § 1983 because their claims were premised on the defendants' violation of a state statute. The district court held a hearing on the motion, but because the plaintiffs and their counsel did not show up, the court could not seek further clarity on "the nature of their claim." So, when the court orally granted the motion and dismissed the suit with prejudice, it addressed each legal theory that might support the plaintiffs' claims.

First, the district court concluded that "if this were a standard Fourth Amendment case … the claim would clearly be time-barred" because the arrests and accompanying searches occurred nearly five years before the federal suit. Next, the judge relied on Judge St. Eve's rationale in *Larson v. LaSalle County*, No. 17-cv-04210, 2018 WL 1156204 (N.D. Ill. Mar. 5, 2018), to explain that if the plaintiffs were alleging that the officers who arrested them "were not authorized under state law to effectuate the arrest[s] and the stop[s] and the search[es,]" then there "doesn't seem to be a federal claim." But even if there were, the court explained, the claim "would have accrued … at the time of the arrest" when the plaintiff knew of "the injury and the causation," not "the particular legal theory." Finally, the court added that, even if the statute of limitations did not start running until the plaintiffs knew that the unit was illegitimate, the Illinois Appellate Court had confirmed that theory in June 2015, more than two years before Flynn and Pirro filed this suit. Thus, under any understanding of the claims, they were untimely.

### Analysis

On appeal, Pirro and Flynn argue only that the district court erred in concluding that the statute of limitations expired before they filed their complaint. This court reviews "de novo a district court's order granting a Rule 12(b)(6) motion to dismiss based on the statute of limitations." *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). It is "irregular" to raise a statute of limitations defense in a 12(b)(6) motion, *see Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014), but doing so is fitting when "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Id.* at 614 (internal citation omitted).

Although the parties agree that the statute of limitations for § 1983 claims in Illinois is two years, 735 ILCS 5/13-202; *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019), the appellants contend that their claims did not accrue until the Illinois Supreme Court decided that the SAFE unit violated 55 ILCS 5/3-9005(b). In their view, only that ruling "fully determined," "finally determined," or "truly perfected" their right to seek relief, thus starting the two-year clock. This argument is mistaken.

A claim under § 1983 for the violation of a federal law accrues "when a plaintiff knows the fact and the cause of an injury." *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (internal citation omitted). The idea that Flynn and Pirro could not have asserted their claims before the Illinois Supreme Court decided that they had been unlawfully arrested, searched, and detained is belied by their own motions to suppress. True, those motions argued that the SAFE officers lacked the background checks required by § 3-9005(b), not that the creation of the SAFE unit was unlawful, but the broader argument was available. The very same statute specifies a finite list of authorized actions for special investigators appointed by the State's Attorney. None of the steps that the SAFE officers took in stopping, searching, and arresting the plaintiffs (and others like them) are included. Therefore, the plaintiffs had grounds to challenge the SAFE officers' actions at the time they occurred.[1]

Any possible constitutional challenge to those actions accrued more than two years before the plaintiffs filed their federal case in 2016. A claim of unlawful search or seizure accrues at the time of that search or seizure—in this case, 2013. *See Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). A Fourth Amendment claim of unlawful detention accrues when the detention ceases. *See Lewis*, 914 F.3d at 478; *Manuel v. City of Joliet*, 903 F.3d 667, 669 (7th Cir. 2018). After the Illinois trial courts quashed the evidence against Pirro and Flynn in 2013, both plaintiffs were released on bond until the cases against them were dismissed in late 2017. Theoretically, pretrial release could be construed as a seizure, but only if "the conditions of that release impose[d] significant restrictions on liberty." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1016 (7th Cir. 2019). Before the oral argument in this case, the appellants had never alleged that they were subject to restrictive bond conditions, only that they were unlawfully detained. At oral argument they had nothing to back up the insinuation, contradicted by the defendants, that their bond conditions prevented them from leaving the state. Therefore, the statute of limitations on any unlawful detention claim began to run when their physical custody ended in 2013.

---

[1] Further, the pending appeals in state court did not bar the appellants from suing in federal court. Rather, if the appellants would have timely filed their suit, the district court would have abstained from acting on the § 1983 claims while the related state criminal appeals were ongoing. *See Younger v. Harris*, 401 U.S. 37 (1971); *see also Simpson v. Rowan*, 73 F.3d 134, 137–39 (7th Cir. 1996).

Of course, deeming the constitutional claims untimely presupposes the existence of constitutional claims. The district court concluded that there were none, and the appellants did not engage with that determination in their brief. This court reviews de novo a district court's dismissal for failure to state a claim. *See Ochoa v. State Farm Life Ins. Co.*, 910 F.3d 992, 994 (7th Cir. 2018). In their brief, Pirro and Flynn stated without elaboration that they allege violations of "Constitutionally protected rights to be free from illegal stops, questioning, interrogation, detention, charging, and incarceration." But, even when repeatedly pressed at oral argument, they pointed only to state law for the proposition that their seizures violated the Fourth Amendment. A violation of state law, however, "is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006); *see also Bruce v. Guernsey*, 777 F.3d 872, 876 (7th Cir. 2015) ("the constitutionality of a seizure does not depend on the particularities of state law"). The appellants could not articulate what, apart from the illegitimate nature of the SAFE unit, purportedly violated their Fourth Amendment rights. Perhaps there was an argument to be made that deputizing civilians to make traffic stops violates the Fourth Amendment's standards apart from any violations of state law, but these plaintiffs did not make it. The judgment of the district court is AFFIRMED.