In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 14-3261

HYSON USA, INC.,
LEONID TANKSY, and
ENNA GAZARYAN,

*Plaintiffs-Appellants*,

*v.*

HYSON 2U, LTD.,
KAROLIS KAMINSKAS, INC.,
and KAROLIS KAMINSKAS,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 14 C 4320 — **Milton I. Shadur**, *Judge*.

_____

ARGUED SEPTEMBER 10, 2015 — DECIDED MAY 16, 2016

_____

Before FLAUM, RIPPLE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. This is a trademark dispute between two food-distribution companies named Hyson. Hyson USA, Inc., is owned by Leonid Tansky and formerly em-

ployed Karolis Kaminskas as a manager. In early 2012 Hyson USA experienced a serious financial setback and suspended its operations. In a role reversal, Tansky then went to work for Kaminskas at his newly formed company Hyson 2U, Ltd. That company operated in much the same way as Hyson USA.

About 17 months later, Tansky was fired. This suit is his response. Tansky and his company, Hyson USA, accuse Hyson 2U and Kaminskas of trademark infringement. *See* 15 U.S.C. §§ 1114 *et seq.* Hyson 2U moved to dismiss for failure to state a claim, *see* FED. R. CIV. P. 12(b)(6), arguing that the complaint affirmatively established the defense of acquiescence. That defense estops recovery if the trademark owner, by his words or conduct, manifested his consent to the defendant's use of the mark. The district court granted the motion and dismissed the case.

We reverse. The district judge jumped the gun in dismissing the case at the pleading stage. Acquiescence is a fact-intensive equitable defense that is rarely capable of resolution on a motion to dismiss under Rule 12(b)(6).

## I. Background

Hyson USA and Hyson 2U are food distributors with a common history. Hyson USA is wholly owned by its president, Leonid Tansky, and has operated since 2006. Karolis Kaminskas was one of its managers. In the spring of 2012, Hyson USA encountered serious financial difficulty, culminating in the loss of its liability insurance. That move forced the company to suspend its operations.

In September 2012 Kaminskas established Hyson 2U, and Hyson USA then transferred its branded inventory and

equipment to the new company. Hyson 2U also leased the warehouse from which Hyson USA had operated. Tansky then switched roles with Kaminskas and went to work for him at his new company. After the changeup Hyson 2U operated in the same manner and in the same markets as Hyson USA.

For reasons not disclosed, in February 2014 Tansky was fired. About five months later, he and Hyson USA—now up and running again—sued Hyson 2U and Kaminskas alleging claims for trademark infringement under the Lanham Act;[1] the suit also included several state-law claims.[2] The defendants (we'll refer to them collectively as "Hyson 2U") moved to dismiss the federal claims under Rule 12(b)(6), arguing that the allegations in the complaint established the affirmative defense of acquiescence. The judge agreed, dismissed the trademark claims, and relinquished supplemental jurisdiction over the state-law claims. This appeal followed.

## II. Discussion

We review de novo the district court's order dismissing the complaint under Rule 12(b)(6) for failure to state a claim. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). Dismissal is appropriate under that rule when the factual allegations in the complaint, accepted as

---

[1] The Lanham Act claims are for trademark infringement, false designation of origin, trademark dilution, and cybersquatting. *See* 15 U.S.C. § 1114(1); *id.* § 1125(a), (c), (d).

[2] Tansky's wife, Enna Gazaryan, is also a plaintiff, but her presence in the suit is not important here. We'll refer to the plaintiffs collectively as "Hyson USA."

true, do not state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015). This case implicates the pleading principle that "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). That is, a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses. *Chi. Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014).

An exception applies when "the allegations of the complaint … set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). However, because affirmative defenses frequently "turn on facts not before the court at [the pleading] stage," *Brownmark Films*, 682 F.3d at 690, dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense, *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). In other words, the plaintiff "must affirmatively plead himself out of court." *Chi. Bldg. Design*, 770 F.3d at 614.

At issue here is the doctrine of acquiescence, a fact-sensitive equitable defense that may estop a trademark owner from obtaining injunctive and monetary remedies for trademark infringement. Before turning to the specifics of the defense, it's helpful to step back and recall some basics of trademark law.

The purpose of trademark protection is to identify the source of a good or service to consumers. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 9 (AM. LAW INST. 1995).

Trademark law does this by granting the owner of a mark the right to prevent others from using the mark in a way that is likely to cause confusion. *See Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) ("The keystone of trademark infringement is likelihood of confusion as to source, affiliation, connection, or sponsorship of goods or services among the relevant class of customers and potential customers.") (internal quotation marks and citation omitted). Trademark protection is granted only for so long as the mark reliably identifies the source of a good or service. *Accord Eva's Bridal Ltd. v. Halanick Enters.*, 639 F.3d 788, 790 (7th Cir. 2011) ("A person who visits one Kentucky Fried Chicken outlet finds that it has much the same ambiance and menu as any other. … The trademark's function is to tell shoppers what to expect—and whom to blame if a given outlet falls short.").

If a trademark owner acquiesces to another's use of his mark, however, then the mark's original source-identifying power is weakened and the owner may be estopped from obtaining relief in an infringement action against the junior user. *See TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997); *accord Eva's Bridal*, 639 F.3d at 790. Thus, acquiescence is an affirmative defense in an action for trademark infringement under the Lanham Act. *See* 15 U.S.C. § 1115(b)(9).

Generally speaking, acquiescence is an equitable doctrine that permits the court to deny relief in an action for trademark infringement if the evidence shows that the owner of the mark has, through his words or conduct, conveyed his consent to the defendant's use of the mark. *See Magic Touch*, 124 F.3d at 885; *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 932–33 (7th Cir. 1984); *see also SunAmerica Corp. v. Sun*

*Life Assurance Co.*, 77 F.3d 1325, 1334 (11th Cir. 1996); *see generally* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 29. The defense prevents the trademark owner from impliedly permitting another's use of his mark and then attempting to enjoin that use *after* the junior user has invested substantial resources to develop the mark's goodwill. *See Magic Touch*, 124 F.3d at 885. We've noted (as have other courts) that "acquiescence is related to the doctrine of laches, by which equity comes to the aid of an innocent user and grants him refuge from a claimant who has calmly folded his hands and remained silent while the innocent user has exploited and strengthened the mark." *Id.* (internal quotation marks omitted). Indeed, our acquiescence cases import aspects of laches analysis, looking to the reliance interests of the junior user, the senior user's delay in enforcing his rights, and the prejudice to the junior user if the senior user's rights are enforced. *See, e.g., Piper Aircraft*, 741 F.3d at 932–33; *Magic Touch*, 124 F.3d at 885–86; *Seven-Up Co. v. O-So-Grape Co.*, 283 F.2d 103, 106 (7th Cir. 1960) (formally decided under the doctrine of laches but also discussing acquiescence).

Importantly, however, "[w]hereas laches is a negligent, unintentional failure to protect trademark rights, [a]cquiescence is associated with *intentional* abandonment." *Piper Aircraft*, 741 F.2d at 933 (emphasis added and quotation marks omitted). It requires an "*affirmative* word or deed" that conveys the trademark owner's implied consent to the junior user's use of his marks. *Magic Touch*, 124 F.3d at 885 (emphasis added and quotation marks omitted).

Or, as the Fourth Circuit has aptly put it, "[a]cquiescence is the active counterpart to laches, a doctrine based on passive consent. Both doctrines connote consent by the

owner to an infringing use of his mark, but acquiescence implies active consent." *What-A-Burger of Va., Inc. v. Whataburger of Corpus Christi, Tex.*, 357 F.3d 441, 452 (4th Cir. 2004) (internal quotation marks omitted); *accord Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000) ("Acquiescence requires proof even more demanding than a showing[,] which would suffice for a laches defense[,] that the party seeking to enforce its trademark rights has unreasonably delayed pursuing litigation and, as a result, has materially prejudiced the alleged infringer.").

In short, although our cases sometimes blend the doctrines of acquiescence and laches, they are formally distinct and should be analyzed separately. *See* 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:41 (4th ed. 2014) ("To preserve some semantic sanity in the law, it is appropriate to reserve the word 'acquiescence' for use only in those cases where the trademark owner, by affirmative word or deed, conveys its implied consent to another. That is, laches denotes a merely passive consent, while acquiescence implies active consent. This results in two separate legal categories: 'estoppel by laches' as distinct from 'estoppel by acquiescence.'").

The Eleventh Circuit has distilled acquiescence doctrine into three elements: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the [senior user's] delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *SunAmerica*, 77 F.3d at 1334; *see also Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991). The Second and Ninth Circuits agree and have adopted this test for the

defense. *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010) (listing the same elements); *Pro Fitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002) (same). Our acquiescence cases engage in essentially the same analysis (though without listing elements), so we'll use this formulation too.

Applying this understanding of the doctrine here, Hyson USA's complaint does not unambiguously establish the affirmative defense of acquiescence. The complaint alleges that Hyson USA transferred its branded inventory and equipment to Hyson 2U, that Hyson USA knew Hyson 2U was using its marks, and that Tansky worked for Hyson 2U for about 17 months before he was fired. There are no allegations that Hyson USA or Tansky made any active representations—by word or deed—that they would not assert a right or claim regarding the Hyson trademark. The other two elements of the defense—delay and undue prejudice— cannot alone support a finding of acquiescence, so we need say no more about them here.

We note in closing that an equitable defense like acquiescence is not ordinarily susceptible to resolution at the pleading stage. The defense requires a qualitative examination of the parties' words and conduct and an equitable evaluation of the length of the delay and the degree of prejudice to the defendant if the trademark owner's rights are enforced. That kind of analysis generally requires a factual record. We note as well that even when an acquiescence defense can be proven, "[t]he law … allows the senior user's claim to be revived from estoppel if the senior user can show that 'inevitable confusion' would result from dual use of the

marks." *Magic Touch*, 124 F.3d at 886 (quoting *SunAmerica*, 77 F.3d at 1334). That question, too, is generally inappropriate for resolution on the pleadings.

Because the allegations in the complaint do not unambiguously establish everything necessary for the affirmative defense of acquiescence, it was error to dismiss the case under Rule 12(b)(6). Accordingly, we reverse the judgment and remand for further proceedings consistent with this opinion.

REVERSED.