In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1058

ROBERT SCHAEFER, *et al.*,

*Plaintiffs-Appellants*,

*v.*

WALKER BROS. ENTERPRISES, INC., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 6366 — **Charles Ronald Norgle**, *Judge*.

ARGUED SEPTEMBER 25, 2015 — DECIDED JULY 15, 2016

Before WOOD, *Chief Judge*, and BAUER and EASTERBROOK,
*Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Through corporations he
controls, Ray Walker operates six Original® Pancake House
restaurants in Illinois. Robert Schaefer, who worked as a
server at three of these restaurants, contends that they vio-
late the Fair Labor Standards Act, 29 U.S.C. §§ 201–19, and
its state equivalent the Illinois Minimum Wage Law, 820
ILCS 105/1 to 105/15. Federal and state laws provide that tips

count toward the minimum wage and permit employers to pay less in the expectation that tips will make up the difference. Both statutes require some cash payment from the employer, however, no matter how much a worker receives in tips. In Illinois the employer must pay at least 60% of the normal minimum wage. 820 ILCS 105/4(c). This is called the tip-credit rate in both state and federal nomenclature. Because the Illinois floor is higher than the federal minimum set by 29 U.S.C. §203(m)(1), the restaurants paid all servers the Illinois rate.

The district court certified this suit as a class action on behalf of the approximately 500 servers who worked in the restaurants within the period of limitations. The class seeks recovery under Illinois law. Suits under the Fair Labor Standards Act cannot proceed as class actions. Instead they are opt-in representative actions. 29 U.S.C. §216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Twenty-four members of the state-law class agreed to be plaintiffs in the federal-law action; of these, 13 accepted offers of judgment, leaving 11 in addition to Schaefer. For convenience, we use Schaefer's name to designate both the class members and the federal-law plaintiffs.

Schaefer contends that, until May 2011, the restaurants failed to give servers the information that §203(m) requires as a condition of paying a tip-credit wage. (In May 2011 the restaurants started using a brochure designed by the Department of Labor to implement a regulation that took effect that month. 29 C.F.R. §531.59(b). Schaefer concedes that this notice is adequate.) This claim is based exclusively on feder-

al law and is limited to Schaefer plus the 11 who opted in. Schaefer's other claim affects all servers. He contends that servers at the restaurants spent some of their time doing non-tipped duties such as slicing mushrooms and tidying up their service areas, and that the restaurants had to pay the full minimum wage for the time that the class members spent on the non-tipped work. This contention rests on both state and federal law, but Schaefer relies exclusively on federal regulations and precedents, which both sides have assumed are equally applicable under Illinois law. Like the district court, we shall do likewise. The district court granted summary judgment to the restaurants. 2014 U.S. Dist. LEXIS 177157 (N.D. Ill. Dec. 17, 2014).

We start with the dual-jobs claim, which applies to all of the servers. Task lists posted at the restaurants, and affidavits from some of the servers, show that they were assigned to a variety of tasks in addition to taking customers' orders and delivering food. They were required to wash and cut strawberries, mushrooms, and lemons; prepare applesauce and jams by mixing them with other ingredients; prepare jellies, salsas, and blueberry compote for use; restock bread bins and replenish dispensers of milk, whipped cream, syrup, hot chocolate, and straws; fill ice buckets; brew tea and coffee; wipe toasters and tables; wipe down burners and woodwork; and dust picture frames. Servers would rotate among these tasks; some servers apparently never performed some of these tasks. Different servers estimated that these duties took between 10 and 45 minutes daily, depending on which tasks were assigned on a given day and the server's experience and aptitude with them.

The Department of Labor has a regulation, 29 C.F.R. §531.56(e), that distinguishes between dual jobs and "related duties" that may be performed by a tipped employee without requiring the employer to pay the full cash wage. This regulation reads:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

The restaurants contend that the duties assigned to its servers all are similar to "cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" and therefore are "related duties" rather than indicators of a dual job. The restaurants also rely on §30d00(e) of the Department's Field Operations Handbook, which says:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are in-

> cidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

Schaefer does not contest the validity of the regulation and treats the Handbook as entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). See *Fast v. Applebee's International, Inc.*, 638 F.3d 872, 877–79 (8th Cir. 2011) (applying *Auer* to §30d00(e)). The estimates in discovery of 10 to 45 minutes a day for non-tipped activities all come well under 20% of an 8-hour shift. (Ten minutes is 2% and 45 minutes is 9.4%.) Still, Schaefer contends that none of the servers' duties qualifies as "related" to tipped work.

That position is untenable. The restaurants' servers engaged in making coffee, cleaning tables, and several other activities that the regulation or handbook give as examples of duties that may be performed by persons paid at the tip-credit rate. Other duties performed at the restaurants, such as ensuring that hot cocoa is ready to serve and that strawberries are spread on the waffles, are of the same general kind. In *Fast* the Eighth Circuit concluded that cutting fruit and cleaning blenders are related to a server's tipped tasks— though the restaurant lost in *Fast* because non-tipped duties took more than 20% of the employees' time. That some of our plaintiffs' tasks may be performed by untipped staff at other restaurants does not make them unrelated as a matter of law. To see this think of dish removal (clearing tables), which the regulation gives as an example of a related activity. At some restaurants busboys remove dishes after diners

have finished, while at others the servers perform this chore. So it is not helpful to ask, as Schaefer proposes, whether cooks or busboys or janitors do one or another task at other restaurants; the right question is whether the tasks are "related" or "incidental" to tipped duties under the regulation and handbook.

The most problematic duties at these restaurants are wiping down burners and woodwork and dusting picture frames. These do not seem closely related to tipped duties— though the fact that the regulation gives "cleaning and setting tables … and occasionally washing dishes or glasses" as examples of related duties means that cleanup tasks cannot be categorically excluded. We need not decide what to make of wiping the woodwork or dusting picture frames, because in the district court Schaefer aggregated all of the duties. For all this record shows, the time servers spend dusting picture frames is negligible. The Supreme Court told us in *Sandifer v. United States Steel Corp.*, 134 S. Ct. 870, 880 (2014), that the Fair Labor Standards Act does not "convert federal judges into time-study professionals" and require every minute to be accounted for. *Sandifer* holds that, when the "vast majority" of employees' time qualifies for a particular treatment under the Act, that treatment can be applied to the entire period. *Id*. at 881. Given the flexibility of words such as "related" and the 20% cap for un-tipped duties, and given how much less than 20% of working time these servers spent on un-tipped duties at these restaurants, the possibility that a few minutes a day were devoted to keeping the restaurant tidy does not require the restaurants to pay the normal minimum wage rather than the tip-credit rate for those minutes.

Now we turn to the question that is pertinent to the 12 plaintiffs under the Fair Labor Standards Act: whether the restaurants told their servers of the rules governing tip-credit wages. Here is the pertinent language of §203(m):

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
>> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>>
>> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

The trailing paragraph says that employers may not reduce the cash wages of tipped employees unless each "employee has been informed by the employer of the provisions of this subsection" and the employees keep all tips they receive (unless tips are pooled among employees).

Schaefer reads §203(m) to require the employer to tell each tipped worker five things: (1) the cash wage the employee will receive; (2) the difference between this payment and the minimum wage (that is, how much tip credit the employer is claiming); (3) that the worker is entitled to the

full minimum wage through a combination of the cash wage plus tips (in other words, that if tips are less than the tip credit, the employer must make up the difference); (4) that the worker is entitled to keep all tips received (unless tips are pooled among the staff); and (5) that the tip credit cannot be taken in the absence of the first four notices. Since May 2011 the restaurants have told their servers all five of these things, using language provided by the Department of Labor and required by a regulation that took effect that month. 29 C.F.R. §531.59(b). But it is not clear from the statute alone (which governs events before May 2011) that all five pieces of information are required.

Take No. 5—notice that the employer can't take a tip credit without providing the first four pieces of information. If the employer *does* tell the worker the first four things, then it can take the tip credit; the fifth does not add anything to the worker's fund of knowledge (unless the worker is studying to be a lawyer and planning to represent tipped employees at other establishments).

And consider No. 4—notice that the worker is entitled to keep all tips received, unless a pooling arrangement is in effect. This appears in the statute *after* the requirement that workers be "informed" of the subsection's provisions. The structure of the statutory language is that workers be informed of the rules *and* that they keep non-pooled tips. That's a strange way to require workers to be informed *that* they keep all tips. Trying to explain "keep unless pooling" would breed questions such as "how does pooling work?" and "what's a valid pooling arrangement?" If a given employer does not have a pooling arrangement, as the restaurants in this case did not, it is kinder to the employee to pass

the subject in silence. As the Sixth Circuit has remarked, the word "informed" differs from the word "explained": workers are entitled to knowledge about the tip-credit program but not to a comprehensive explanation. *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir. 1998).

Schaefer tells us that the restaurants could and should have complied with §203(m) by providing each worker with a copy of the statute. That's not a sensible way to "inform" non-lawyers about how the tip-credit program works. The statute is hard to parse, even for someone with a legal education, given its opaque structure and its use of the minimum wage from 1996. An employer ought to boil it down and tell workers directly what matters to them.

Three things are apt to matter most to employees at establishments such as these defendants: (a) in anticipation of tips the employer will pay less than the minimum wage; (b) how much the cash wage will fall short of the current minimum wage; and (c) if tips plus the cash wage do not at least match the current minimum wage, the employer must make up the difference. We think that a person told these things has been adequately "informed" for the purpose of the statute, during the time before the Department of Labor elaborated by regulation.

When Schaefer was hired, the restaurant gave him a document that explained uniforms and tipping. Its language included: "Tip Credit. I understand that a portion of the wages I receive are from tips. The Company can apply a credit to the minimum wage to include those tips as wages. The tip credit in Illinois is 40% of minimum wage." The restaurants' handbook for employees provided an example:

| Minimum wage | $5.15 |
|---|---|
| Tip Credit | - $2.06 |
| Hourly rate | $3.09 |

Schaefer received this handbook when he started work in November 2005. The handbook ignored the federal rules, which depend on the minimum wage as of 1996. Worse: the minimum wage in Illinois in 2005 was $6.50 an hour, not $5.15, so the example was wrong about how much the restaurant would claim in tip credit. (For a $6.50 hourly minimum wage, the employee gets a cash payment of at least $3.90 per hour and the tip credit cannot exceed $2.60 per hour.) And neither the text nor the example told Schaefer that, if he did not receive enough in hourly tips to equal or exceed the credit the employer was taking, then the restaurant had to make up the difference. Illinois does not require that piece of information, but federal law does.

The restaurants contend that it is enough that workers know that they will receive less than the minimum wage, in anticipation of tips. Schaefer admitted that he understood that the cash wage had been reduced for this reason. But the handout and the handbook collectively did not contain a vital piece of information required by federal law.

These restaurants did furnish that information separately, however. Federal law requires employers to put posters about minimum-wage rules in areas that employees frequent during the workday. Each restaurant put up at least one poster with this information:

> Employers of "tipped employees" must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employee's cash wage of at least $2.13 per hour do not equal the

> minimum hourly wage, the employer must make up the differ-
> ence. Certain other conditions also must be met.

Schaefer contends that these posters, despite saying in easy-to-understand language that the employer must top up the cash wage if tips do not cover the credit, do not meet the restaurants' statutory obligation because they are not employee-specific. That is, they explain the rules for tip-credit wages (a separate part of the poster states the minimum wage that cash plus tips must equal or exceed) but do not tell any given employee whether a tip credit has been deducted from that employee's wages. But if the employee has been told separately—by the handout, the handbook, and the pay stub—that a tip credit is being deducted, then the essential information has been supplied. The posters are addressed to all of the establishment's workers, some tipped and some not tipped. They have to be general, while the rest of the information comes from what the employer conveyed directly to the tipped workers.

Schaefer does not contend that he or any of the 11 opt-in plaintiffs failed to put two and two together and understand that the cash wage was below the minimum and that the employer must pay more if the cash wage plus tips did not reach the minimum wage. It certainly would have been preferable for the restaurants to put all of the information in one place, as they started to do in May 2011, and provide accurate numerical examples, but §203(m) does not say that all of the information must be in a single document. The handout plus the handbook plus the poster collectively supplied the information required by federal law, and the handbook's error in stating the Illinois minimum wage is not dispositive given that the cash wage promised ($3.09) and paid ($3.60)

both exceeded the federal minimum cash wage of $2.13 an hour required by §203(m).

Schaefer asserts that the poster is "not enough" but does not explain *why* it is inadequate. If posters don't count, what's the point of requiring them? In lieu of making an argument, Schaefer points us to *Driver v. AppleIllinois, LLC*, 917 F. Supp. 2d 793, 801–03 (N.D. Ill. 2013). *Driver* thought the Department of Labor's own pre-2011 poster inadequate because it did not contain all five pieces of information specified by the 2011 regulation, and in particular omitted the requirement that employees keep their tips unless the employer uses tip pooling. But regulatory changes are not retroactive, see *Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988), and we have explained why the statute on its own does not necessarily call for all of the advice required by the regulation. It would be hard to fault an employer for providing exactly the information the Department of Labor then required, in the Department's own words. Schaefer does not contend that he was unable to keep all tips he received. The handbook and poster together supply the restaurants' workers with the three pieces of information that we believe constitute the statutory minimum.

AFFIRMED