**Kimberlee KNOX, Kayla Bratcher on behalf of themselves and all other persons similarly situated, known and unknown, Plaintiffs,**

**v.**

**JONES GROUP, Avon Wings, LLC doing business as Buffalo Wild Wings, Defendants.**

**1:15-cv-01738-SEB-TAB**

United States District Court, S.D. Indiana, Indianapolis Division.

Signed August 15, 2016

Douglas M. Werman, Zachary C. Flowerree, Werman Salas PC, Jamie G. Sypulski, Law Office of Jamie Golden Sypulski, Chicago, IL, for Plaintiffs.

Craig W. Wiley, Melissa K. Taft, Jackson Lewis P.C., Indianapolis, IN, Paul DeCamp, Jackson Lewis LLP, Reston, VA, for Defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

SARAH EVANS BARKER, JUDGE, United States District Court, Southern District of Indiana

This cause is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim [Docket No. 14], filed on December 3, 2015. For the reasons detailed below, Defendants' Motion is **DENIED**.

### Factual Background

Plaintiffs Kimberly Knox and Kayla Bratcher are former employees of Defendants' Buffalo Wild Wings Avon, Indiana location. Together, they have brought claims against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, alleging that Defendants willfully paid them less than the minimum wage during their employment.

While employed at Buffalo Wild Wings, both Knox and Bratcher worked, at varying times, as either a bartender or a server for which they were paid a tip-credit wage of $2.13.[1] As servers, Plaintiffs were required to arrive at the restaurant approximately an hour before it opened to perform "opening duties," which included: placing chairs at tables, making tea, filling ice bins, preparing "sani" buckets, screwing nozzles into soda machines, and portioning ranch and blue cheese dressing.[2] Dkt. 1 at ¶¶ 22, 38. After their morning shifts ended, Plaintiffs were required to perform "out tasks," including: restocking the ice bins, rolling silverware, washing food platters, restocking table caddies, sweeping the floors, portioning more ranch and blue cheese dressings, cleaning trash cans, and sifting through trash bins to locate any silverware which may have been thrown away during the prior shift. *Id.* ¶¶ 23, 39. When Plaintiffs worked the evening shifts, they were required to stay at the restaurant to perform "closing duties" such as: wiping down tables, removing nozzles from soda machines, placing chairs on top of tables, sweeping, vacuuming, mopping and deck scrubbing the floors, cleaning the tea urns, washing food platters, bowls, and silverware, rolling the clean silverware, dumping the trash, cleaning trash cans, and checking for accidentally disposed of silverware. *Id.* ¶¶ 24, 40. During their shifts, Plaintiffs were required to perform additional work between the times they were serving customers, including: washing dirty silverware and food platters, refilling "sani" buckets, brewing iced tea, and emptying the trash. *Id.* ¶¶ 25, 41. Oth-

---

1. Knox worked as a server and bartender for Defendants from approximately February or March 2009 to December 2013. Dkt. 1 ¶ 17. Bratcher's employment was from September 2011 to April 2014. *Id.* at ¶ 32.

2. Plaintiffs allege that servers regularly spent at least one hour during their morning shifts portioning ranch and blue cheese dressings in the kitchen. Dkt. 1 at ¶ 22.

er server duties included: dusting restaurant ledges, cleaning windows, booths, soda machines, ice bins, table caddies, table and chair legs, the wall separating the dining room from the bar area, and the televisions. *Id.* ¶¶ 26, 42. In total, Plaintiffs claim that they spent approximately fifty percent of their time as servers completing these non-customer based tasks. *Id.* ¶¶ 21, 37.

As bartenders, Plaintiffs' "opening duties" included: slicing lemons, limes, and oranges, removing caps from the beers taps, pulling tabs on beer kegs, removing chairs from table tops, refilling the bar's ice bin, and filling the bar's sinks with water and cleaning solution. *Id.* ¶¶ 27, 43. Their post-morning-shift "out tasks" included: washing glassware, restocking beer, wiping down tables, restocking table caddies, and deck brushing and mopping the keg cooler. *Id.* ¶¶ 28, 44. Their "closing duties" included: putting caps on the beer nozzles, washing bar mats, fruit trays, bar spoons, and blenders, cleaning drains under the beer taps, wiping down the bar, placing chairs on table tops, mopping and deck scrubbing the floors, and cleaning debris out of the dishwasher and bar sinks. *Id.* ¶¶ 29, 45. Between customers, Plaintiffs were also required to wash glasses and silverware. *Id.* ¶¶ 30, 46. Other bartender duties included: polishing martini and margarita glasses as well as cleaning drains, ice bins, walls, liquor bottles, shelves, coolers, and glass chillers. *Id.* ¶¶ 31, 47. Plaintiffs claim that they spent between thirty-five and forty percent of their time as bartenders tending to these non-customer based duties. *Id.* ¶¶ 21, 37.

On November 3, 2015, Plaintiffs filed a Complaint on behalf of themselves and others similarly situated alleging that Defendants were in violation of the FLSA by: (1) requiring them to perform non-tipped work that was *unrelated* to their tipped occupations while paying them less than minimum wage, *id.* ¶¶ 80–81; (2) requiring them to perform non-tipped work that was *incidental* to their tipped occupation for more than twenty percent of the time without paying minimum wage, *id.* ¶¶ 82–83; and (3) requiring them to reimburse Defendants from their tips for "customer walkouts" and "cash drawer shortages," while paying them sub-minimum, tip-credit wages. *Id.* ¶¶ 84–85. On December 3, 2015, Defendants filed a motion to dismiss this cause of action, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to state a claim on which relief can be granted. Dkt. 14. The motion was fully briefed on February 4, 2016, but we stayed a ruling pending a decision by the Seventh Circuit in a related case. The related case was decided on July 15, 2016, and Defendants' motion is now ripe for decision.

### Legal Standard

The Federal Rules of Civil Procedure authorize dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, we consider all allegations in the complaint to be true and draw all reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir.2000). Federal Rule of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [she] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2). This reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir.2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give

the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir.2008).

■ In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F.Supp.2d 363, 370 (M.D.Pa.2008).

■ Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not erode the fundamental principle of liberality embodied in Rule 8. As our court

has noted, "Notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D.Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994).

## Discussion

Plaintiffs have alleged that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") by inappropriately paying them a sub-minimum, tip-credit wage. In general, the FLSA mandates that covered employees receive a minimum wage of at least $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). However, § 203 of the Act creates an exception for "tipped employees" according to which an employer may pay an employee a "tip-credit" wage of $2.13 per hour. 29 U.S.C. § 203(m). For the employer to utilize this tip credit in setting wages payable to an employee, the employee must: (1) be "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips," (2) be informed of the tip-credit wage provisions, (3) receive an additional amount on account of the tips equal to any difference between the tip-credit wage and the mandatory minimum wage, and (4) retain all the tips he receives as a tipped employee. 29 U.S.C. §§ 203(m), (t).[3]

---

**3.** Under the FLSA and its implementing regulations, tips are not wages paid by the employer. 29 C.F.R. § 531.52. An employer may use tips as a "credit" towards its minimum wage obligations, but the total wages paid to a "tipped employee" by an employer utilizing the tip credit are always below the full minimum wage. 29 U.S.C. § 203(m). Thus, in

However, an employee is not necessarily employed in only a single occupation. As the Department of Labor has noted:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.

29 C.F.R. § 531.56(e). Such employees are referred to as "dual-job employees." However, the Department of Labor cautions that:

> Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

*Id.* Thus, under the DOL's dual-jobs regulation, an employee will remain a "tipped employee" when she engages in "related" duties that are not by themselves directed toward producing tips.

Plaintiffs argue that based on the foregoing, "dual-job employees" may engage in three distinct types of duties: (1) duties performed as part of their tipped occupation that are directed toward producing tips ("tip-producing duties"); (2) duties related or incidental to the tipped occupation but do not themselves produce tips ("related duties"); and (3) duties related only to their non-tipped occupation and therefore unrelated to their tipped occupation ("unrelated duties").

Further, Plaintiffs contend that an employer may never pay the tip-credit wage for the performance of "unrelated duties" and may pay the tip-credit wage for the performance of "related duties" only where those duties make up no more than 20% of an employee's workload. This 20% rule derives from the Department of Labor's Field Operations Handbook, which provides:

> Reg. 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though the duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example, a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

U.S. Dept. of Labor, *Field Operations Handbook* § 30d00(3) (rev. June 30, 200),

---

cases regarding "tipped employees," the question is not whether the employee's average hourly rate is equal to or exceeds full minimum wage; rather, the question is whether the employer is entitled to take the tip credit under §§ 203(m), (t) when determining the wage rate at which an employee should be paid.

*available at* www.dol.gov/whd/FOH/FOH_Ch30.pdf (visited June 23, 2016).

In bringing this action, Plaintiffs allege that Defendants have inappropriately utilized the tip credit in three ways. First, Plaintiffs allege that they were required to perform a number of "unrelated duties" for which they were unlawfully paid the tip-credit wage of $2.13 rather than the minimum wage. Second, they allege that they were required to spend a substantial portion of their time as servers and bartenders (35–50%) tending to "related" tasks, for which they were unlawfully paid the tip-credit wage. Finally, they allege that they were required to reimburse Defendants from their tips for customer walkouts and cash drawer shortages, in violation of 29 U.S.C. § 203(m).

Defendants have moved to dismiss these claims, arguing that the FLSA's "dual-jobs" framework does not support a cause of action for claims based on the performance of "unrelated duties," that this Court should disregard the 20% rule promulgated by the Department of Labor in its Field Operations Handbook, and that Plaintiffs in all respects have failed to sufficiently plead their claim of unlawful reimbursement. We address each argument in turn below.

## I.  Plaintiffs'  "Unrelated  Duties" Claims

■ We first address Defendants' argument that the FLSA does not support a cause of action for insufficient wages based on the performance of "unrelated duties." Defendants contend that the FLSA and its implementing dual-jobs regulations are intended for workers employed in multiple tipped and non-tipped occupations by the same employer. In contrast, the regulations contemplate that a worker employed in a single, tipped occupation may be required to perform a variety of tip-producing and non-tip-producing duties. See 29 C.F.R. § 531.56(e) (expressly listing, "cleaning and setting tables, toasting bread, making coffee...occasionally washing dishes or glasses" as examples of related, non-tip-producing occupational duties). Accordingly, Defendants contend that because Plaintiffs were employed only in a single, tipped occupation—whether as a bartender or a server—they may not, by parsing their single occupation into tipped and non-tipped components, craft dual-job claims. Defs.' Br. at 14.

Defendants mistakenly rest their analysis on the assumption that Plaintiffs were in fact employed in a single occupation. Because Plaintiffs have raised "dual-jobs" claims, see dkt. 1 at ¶ 7, they have implicitly, if not explicitly, alleged that they were employed in two separate occupations—a tipped, service occupation and a non-tipped, custodial occupation. An employer is prohibited from taking the tip credit for time an employee spends working in a non-tipped occupation; instead, the employee must be paid in full at the minimum wage level for that time. The question presented by this action is whether Plaintiffs were, in fact, employed in two distinct occupations, or whether, as Defendants maintain, they were employed in a single occupation that was comprised of both tip-producing and incidental, non-tip-producing tasks. 29 U.S.C. § 203(m); 29 C.F.R. §§ 531.51, 531.59. Said another way, the issue to be resolved is whether the duties assigned to Plaintiffs were so time-consuming and unrelated to their tipped occupations that they in fact constituted a separate occupation for which they were entitled to be paid full minimum wage. The cases cited by Defendants indicate that this issue will turn on factors such as the relatedness, typicality, and duration of these allegedly "unrelated" duties. *See Pellon v. Business Rep. Int'l, Inc.*, 528 F. Supp. 2d 310 (S.D.Fla.2007), *aff'd*, 291 Fed.Appx. 310 (11th Cir.2008)

(holding that the duties performed by Plaintiffs were "at worst" related duties in a tipped occupation, not those of another occupation); *Roberts v. Apple Sauce, Inc.,* 945 F.Supp.2d 995, 1003 (N.D.Ind.2013) (holding that servers who perform some food preparation during their shift are "entirely different" than employees who are designated to make salads for an entire shift).[4]

We note the divergent rulings in the *Schaefer* and *Driver* cases emanating from our Circuit. In these cases, a class of restaurant waiters, bartenders, and other tipped employees filed suit against their respective employers alleging that they had been unlawfully paid tip-credit wages for performing non-tip-producing work. In *Driver v. AppleIllinois, LLC,* the district court ruled in favor of the plaintiffs on summary judgment, finding that because they were required to spend significant percentages of their shifts performing duties which were "clearly...not part of the occupation of a tipped employee," the plaintiffs had engaged in dual occupations for which they should have been more fully compensated. 890 F.Supp.2d 1008, 1031 (N.D.Ill.2012). These duties included cleaning bathrooms, mopping floors, dusting paneling, loading dishwashers, washing windows, cleaning chandeliers, picking up trash in the parking lot, restocking bathrooms, and dumping and refilling "sani" buckets. *Id.* at 1031–32. In contrast, in *Schaefer v. Walker Bros. Enters, Inc.,* the district court reached an opposite result, holding that the "side work" assigned to the plaintiffs—which included washing and cutting produce, preparing applesauce, jams, jellies and salsas, restocking bread bins, replenishing dispensers of milk, whipped cream, syrup, hot chocolate and straws, filling ice buckets, brewing tea and coffee, wiping down toasters, tables, burners and woodwork, and dusting picture frames—amounted to only "incidental" duties related to their tipped occupation. 2014 WL 7375565, at *4 (N.D.Ill. Dec. 17, 2014).

On appeal, the Seventh Circuit very recently affirmed the district court's decision in *Schaefer,* holding that many of the alleged duties, such as making coffee and cleaning tables, were explicitly referenced by the DOL as examples of duties that may be performed by persons paid at the tip-credit rate. *Schaefer v. Walker Bros. Enters. Inc.,* 829 F.3d 551, 2016 WL 3874171, at *2 (7th Cir. July 15, 2016). Other duties, such as ensuring hot cocoa was ready to serve and that strawberries were spread on waffles, were "of the same general kind." *Id.* Still others, such as cutting fruit and cleaning kitchen appliances, were adopted from the Eight Circuit's decision in *Fast v. Applebees's Int'l, Inc.,* 638 F.3d 872, 877–79 (8th Cir.2012) as being "related to a server's tipped tasks." *Id.* The Seventh Circuit described the remaining duties—wiping down burners and woodwork and dusting picture frames—as the "most problematic" in terms of their analysis, stating that they "do not seem closely related to the tipped duties." *Id.* at *3. However, the court declined to determine whether the performance of such unrelated duties constituted a dual-jobs claim. *Id.* Instead, the Seventh Circuit held that because the time spent performing these unrelated duties was "negligible," the restaurants were not required to pay the normal minimum wage rates for those minutes. *Id.*

---

4. Defendants also rely on *Schaefer v. P.F. Chang Bistro,* 2014 WL 3809069 (D.Ariz. Aug. 1, 2014) to support their arguments. However, our review of that case reveals that Schaefer conceded that the tasks in which he was engaged were related to his tipped occupation, arguing only that P.F. Chang violated the FLSA's § 203(m) tip credit provision by requiring him to perform such non-tipped work in excess of 20% of his workweek—an issue we address below.

The *Driver* and *Schaefer* cases signal that in some situations the performance of duties unrelated to a tipped employee's occupation may support a cause of action under the DOL's dual-jobs regulations but that the division between permissible, related duties and impermissible, unrelated duties is not categorical. Thus, to determine whether the performance of certain duties amounts to engaging in dual occupations, we must analyze both the qualitative and quantitative nature of the allegedly unrelated duties. *See Driver*, 890 F.Supp.2d at 1032 ("there is a *quantitative* as well as a *qualitative* element to the distinction between the duties of the tipped and untipped occupations in the restaurant industry") (emphasis in original).

At this stage in this litigation, however, we are required to view the pleadings in a light most favorable to Plaintiffs, accepting their facts as true and drawing all reasonable inferences in their favor; thus, for now, we accept that Plaintiffs were engaged in unrelated, non-tip-producing duties for hours at a time. That is to say, we accept as true that Plaintiffs were engaged in dual occupations and that they were unlawfully denied full minimum wage for time spent engaged in their non-tipped, custodial occupation. Accordingly, Defendants' motion to dismiss Plaintiffs' dual jobs claims is **DENIED**.

## II. Plaintiffs' "Related Duties" Claims

We turn next to address Plaintiffs' claims that they were required to perform non-tip-producing duties related or incidental to their tipped occupations for more than 20% percent of their time on the clock. As explicated above, this claim is

based on the Department of Labor's Field Operations Handbook, which states, in part, that "where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." U.S. Dept. of Labor, *Field Operations Handbook* § 30d00(3) (rev. June 30, 200), *available at* www.dol.gov/whd/FOH/FOH_Ch30.pdf (visited June 23, 2016).

Defendants argue that we should disregard the Handbook's 20% rule in light of the DOL's allegedly inconsistent position on the issue. Specifically, Defendants have provided the Court with a long and detailed account tracking the Department's allegedly shifting position(s)—including a 1980 Opinion Letter, a 1985 Opinion Letter, the 1988 Revisions to The Field Operations Handbook, and a now-withdrawn 2009 Opinion Letter—arguing that "by engaging in such a chaotic approach to construing the dual jobs regulation, the DOL has clearly forfeited any measure of deference by the courts on its interpretation of the regulation." Defs.' Br. at 11. At the time Defendants filed their motion, the Seventh Circuit had not addressed this issue directly. Thus, Defendants maintain that that we should follow the approach taken in *Pellon v. Business Representation Int'l, Inc.*, 528 F.Supp.2d 1306 (S.D.Fla.2007), *aff'd*, 291 Fed.Appx. 310 (11th Cir.2008) and *Schaefer v. P.F. Chang Bistro*, 2014 WL 3809069, 2014 U.S. Dist. LEXIS 10544 (D.Ariz. Aug. 1, 2014), in which the district courts declined to adopt the DOL's 20% rule.[5] Plaintiffs argue oth-

---

**5.** It is worth noting that the district court in *Pellon* did not dispute the validity of or the deference due the DOL's 20% rule, but instead found that a determination of whether the plaintiffs had engaged non-tipped work more than 20% of the time was unnecessary

under the facts of that case because the "overwhelming majority" of tasks complained of by the plaintiffs were neither maintenance nor general preparation work. 528 F.Supp.2d at 1313–14.

erwise, urging us to follow the Eight Circuit's decision in *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880–81 (8th Cir.2011), which held that the DOL's interpretation of the dual-jobs regulation was reasonable and, therefore, it was entitled to deference under *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Plaintiffs also cite the Seventh Circuit's decision in *Driver v. AppleIllinois, LLC*, in which Judge Posner wrote, in *dicta*, that "(a) tipped employee is entitled just to the sub-minimum, tip credit wage rate *unless* he is doing either unrelated non-tipped work or related non-tipped work in excess of 20 percent of his work day." 739 F.3d 1073, 1076 (7th Cir.2014) (emphasis added).[6]

Defendants' motion currently before us was fully briefed as of February 4, 2016. The Seventh Circuit had scheduled oral argument in *Schaefer v. Walker Bros. Enters.*, for September 25, 2015. Thus, we delayed our ruling in anticipation of the Seventh Circuit's guidance, which decision was issued on July 15, 2016. *See Schaefer*, 829 F.3d 551, 554–55, 2016 WL 3874171, at *2 (7th Cir.2016).[7] As it turned out, the facts of the *Schaefer* case did not require a ruling as to whether the DOL's 20% rule is controlling, given that those plaintiffs had engaged in non-tipped activities of between a mere 2% and 9.4% of their shifts. However, the court did cite favorably to both the Field Operations Handbook and the Eighth Circuit's *Fast* decision in reaching the following conclusion:

> Given the flexibility of words such as "related" and *the 20% cap for un-tipped duties*, and given how much less than 20% of working time these servers spent

on un-tipped duties at these restaurants, the possibility that a few minutes a day were devoted to keeping the restaurant tidy does not require the restaurants to pay the normal minimum wage rather than the tip-credit rate for those minutes.

*Schaefer*, 2016 WL 3874171, at *3 (emphasis added).

While neither the *Driver* nor the *Schaefer* decision provides controlling circuit precedent on the question of whether the DOL's sub-regulation is entitled to *Auer* deference, both opinions inform our decision here. We conclude, therefore, consistent with the Eighth Circuit's holding in *Fast v. Applebees Int'l, Inc.*, that the DOL's interpretation of § 531.56(e) is entitled to deference. Section 203 of the FLSA allows an employer to take the tip credit for an employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). However, the Act does not define the circumstances surrounding the issue of when an employee is "engaged in an occupation." In response to that omission, the DOL has promulgated dual-jobs regulations to clarify that phrase. Its regulations state that in some situations an employee may be employed in dual jobs, such as a maintenance worker and a waiter, and that no tip credit may be taken for his hours worked as a maintenance worker. 29 C.F.R. § 531.56(e). On the other hand, the regulations also provide that a waitress "who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing

**6.** The Seventh Circuit's decision in *Driver* arose out of an employer's application for leave to file an interlocutory appeal of the district court's denial of his challenge to class certification under Fed. R. Civ. P. 23(f). Thus, while Judge Posner's statement unquestionably signaled the court's awareness and likely acceptance of both the "unrelated/related"

duties distinction and the DOL's 20% rule, it did not carry controlling weight given the case's procedural posture.

**7.** Thereafter, on July 22 and 25, 2016, the Magistrate Judge granted leave to the parties to supplement their briefing in light of the *Schaefer* decision. See Dkts. 70, 71.

dishes or glasses" is entitled to receive only the tip credit wage for the performance of such related duties. *Id.* (emphasis added).[8]

Through its use of the terms "part of [the] time" and "occasionally," the dual-jobs regulation embodies temporal limitations regarding the performance of related, non-tipped duties; however, no provision addresses the situation where an employee performs those duties *more* than "occasionally" or "part of [the] time," rendering § 531.56(e) ambiguous in its own right. Thus, under *Auer*, the DOL's attempt to further interpret and explain the regulation in its Field Operations Handbook makes it "controlling unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461, 117 S.Ct. 905. We find this interpretation to be neither erroneous nor inconsistent with the underlying regulation.

The 20 percent threshold established in the Handbook reasonably quantifies the temporal limitations placed on the performance of related duties by the dual-jobs regulation. Defendants have offered no reason for the terms "occasional" and "part of [the] time" not to be interpreted as "insubstantial" or "no more than 20 percent." In fact, we note that such a threshold is found elsewhere in defining the term "substantial" with regard to the performance of certain duties under the FLSA. See 29 U.S.C. §§ 213(a)(12), (15); 29 C.F.R. §§ 552.6, 553.212(a), 783.37. Defendants repeatedly invoke what they view as the practical implications of placing *any* temporal limitations on performance of non-tipped duties, arguing that any such limitation on the performance of specific duties, whether related or not, would place a "monstrous" burden on the restaurant industry, so much so that it is inconceiva-

ble that Congress would have intended that result. Defs.'s Br. at 15. Defendants lay out various hypotheticals in which waiters perform non-tipped tasks for mere seconds during their shift, arguing that if the restaurant were required to clock those seconds separately "the practicalities of applying this rule [would be] simply unworkable." *Id.*

■ Our case, however, is not about minutes or seconds per day; rather, Plaintiffs have alleged that they spent hours before, during, and after their shifts performing non-tipped work. More specifically, they claim that they spent 50% of their time as servers, and 35–40% of their time as bartenders, performing non-tipped work. Accepting these allegations as true, as we must, it is clear that Plaintiffs performed non-tipped work well in excess of "occasionally" or merely "part of [their] time." These allegations are sufficient to state a claim under 29 U.S.C. § 203 and 29 C.F.R. § 531.56. Thus, Defendants' motion to dismiss on this ground is **DENIED**.

### III. Plaintiffs' Claim of Unlawful Reimbursement

■ Lastly, Plaintiffs allege that Defendants violated 29 U.S.C. § 203(m), which provides that an employer may not take the tip credit for a tipped employee, "unless . . . all tips received by such employee have been retained by the employee."

Specifically, the Complaint alleges that: Along with its subsidiary or affiliated companies, including Avon Winds, The Jones Group has a policy and practice of paying its Tip-Credit Employees subminimum, tip-credit wages even though it requires them to pay The Jones Group or its subsidiary or affiliated companies,

---

8. The parties do not dispute that this dual-jobs regulation is entitled to deference under *Chevron U.S.A. Inc. v. Natural Res. Def. Coun-* *cil, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

including Avon Wings, from their tips for customer walkouts and cash drawer shortages.

Compl. at ¶ 5.

With regard to each named Plaintiff, the Complaint states that:

> While paying her at the sub-minimum, tip-credit wage to work as a server, Defendants required Plaintiff [ ] to reimburse them from her tips when customers walked out of the restaurant without paying for their meals.
>
> While paying her at the sub-minimum, tip-credit wage to work as a bartender, Defendants required Plaintiff [ ] to reimburse them from her tips when her bar cash drawer had a cash shortage.

Compl. at ¶¶ 19–20, 35–36.

■ Defendants fault these allegations as failing to satisfy the pleading standards of Rule 8 of the Federal Rules of Civil Procedure in that they do not specify when or how often the alleged tip deductions occurred. Defs.'s Br. at 16. We disagree with this criticism. As explained in detail above, Rule 8's plausibility standard requires only that Plaintiffs "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir.2010). Plaintiffs have satisfied that requirement here by alleging that Defendants paid them the tip-credit wage and also required reimbursement for expenses from their tips, in violation of § 203(m). At this stage in the litigation, Plaintiffs are not required to state with particularity the frequency with which the tip deductions occurred, given that an employer may not take the tip credit if it requires employees to return *any* of their tips. See 29 U.S.C. § 203(m) (requiring that tipped employees retain *all* tips received).

■ Likewise, it is sufficient that Plaintiffs have alleged that their tips were reduced during their employment at Defendants' Avon location. Defendants' argument that the tip deductions could have occurred outside the applicable two or three-year statute of limitations is more appropriately characterized an affirmative defense. See Fed. R. Civ. P. 8(c)(1) (listing "statute of limitations"). It is a well-established principle of federal pleading that "the mere presence of a potential affirmative defense does not render the claim for relief invalid. That is, a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir.2016) (internal citations omitted). Indeed, the granting of a motion to dismiss is appropriate only when the factual allegations in the Complaint unambiguously establish each element of the asserted affirmative defense. *Id.* Such is not the case here. Accordingly, we hold that Plaintiffs have satisfied Rule 8's pleading requirements with regard to their claim of unlawful reimbursement under 29 U.S.C. § 203(m). Defendants' motion to dismiss on this ground is also **DENIED**.

### Conclusion

For the reasons detailed above, Defendants' Motion to Dismiss for Failure to State a Claim [Docket No. 14] is **DENIED**. The case shall proceed accordingly.

IT IS SO ORDERED.