[Cite as *Samadder v. Ohio State Univ. Wexner Med. Ctr.*, 2024-Ohio-6104.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Anjana Samadder et al.,       :

      Plaintiffs-Appellants,       :

            No. 23AP-774

v.       :       (Ct. of Cl. No. 2021-00536JD)

The Ohio State University       :       (REGULAR CALENDAR)
Wexner Medical Center,

      :

      Defendant-Appellee.

      :

D E C I S I O N

Rendered on December 31, 2024

**On brief:** *Colley Shroyer & Abraham Co. LPA*, and *David I. Shroyer*, for appellants. **Argued:** *David I. Shroyer*.

**On brief:** *Reminger Co., L.P.A*, *Justin D. Harris*, *Taylor C. Knight*, and *Hannah R. Duschl*; *Dave Yost*, Attorney General, and *Brian M. Kneafsey, Jr.* for appellee. **Argued:** *Brian M. Kneafsey, Jr.*

APPEAL from the Court of Claims of Ohio

BOGGS, J.

{¶ 1} Plaintiffs-appellants, Dr. Anjana Samadder and Dr. Gautam Samadder, appeal the decision of the Court of Claims of Ohio, which granted the motion for summary judgment of defendant-appellee, the Ohio State University Wexner Medical Center ("OSUWMC"). For the following reasons, we affirm in part, reverse in part, and remand this matter to the Court of Claims.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 2} On April 7, 2020, Dr. Anjana Samadder (hereinafter "Dr. Samadder") was admitted as a patient to the OSUWMC to receive treatment for COVID-19. Dr. Samadder alleged that, during her hospital stay, she was placed on a venovenous extracorporeal

membrane oxygenation ("ECMO"). (Sept. 23, 2021 Compl. at 2.) On April 17, 2020, the cannulation was changed from the ECMO to an Avalon catheter. *Id.* Dr. Samadder claims that during the placement of the Avalon catheter she experienced a perforation to her right ventricle which required an emergency sternotomy and repair. *Id.* She further alleged that she experienced swelling and a loss of pulse in her left arm following that procedure. *Id.*

{¶ 3} On April 18, 2020, Dr. Mounir Haurani, a vascular surgeon and employee of the OSUWMC, performed a bedside thrombectomy on Dr. Samadder's left arm. Dr. Samadder maintains that following the thrombectomy she developed compartment syndrome that was not diagnosed until April 27, 2020, for which she then received a fasciotomy as treatment. Now, Dr. Samadder argues that, because of the delayed diagnosis of compartment syndrome, she has suffered irreparable and permanent damage to her left arm that has rendered it deformed and useless.

{¶ 4} On September 23, 2021, Dr. Samadder and her husband, Dr. Gautam Samadder, filed a complaint against OSUWMC asserting claims of medical negligence and loss of consortium and seeking judgment for "economic and non-economic damages in excess of $1 million, attorneys' fees, costs, and any other legal and/or equitable relief that [the] Court deems just and proper. *Id.* at 4.

{¶ 5} On February 11, 2022, OSUWMC filed a motion for judgment on the pleadings, arguing that it was immune from suit under the Public Readiness and Emergency Preparedness Act and Am.Sub.H.B. No. 606 and that the Samadders failed to state a claim upon which relief could be granted. On March 25, 2022, the Court of Claims denied OSUWMC's motion for judgment on the pleadings, finding that whether OSUWMC is entitled to qualified civil immunity may not be determined based solely on the pleadings.

{¶ 6} On September 15, 2023, OSUWMC filed a motion for summary judgment, arguing that it is entitled to qualified civil immunity under Am.Sub.H.B. No. 606. Dr. Samadder responded that OSUWMC is not entitled to immunity because the standard of care, which she contends requires the performance of a fasciotomy at the same time as a brachial thrombectomy, was not altered by the COVID-19 pandemic and that nothing about Dr. Samadder's diagnosis or the pandemic would have prevented the exercise of the standard of care.

{¶ 7}   On November 29, 2023, the Court of Claims granted OSUWMC's motion for summary judgment. The court found that OSUWMC met its burden to establish immunity under Am.Sub.H.B. No. 606. The court looked to the evidence and determined that Dr. Samadder was a hospitalized patient at OSUWMC in April 2020 when Am.Sub.H.B. No. 606 was in effect, that Dr. Samadder was one of OSUWMC's first COVID-19 patients who was critically ill, that OSUWMC provided care to Dr. Samadder, and that during that time, OSUWMC medical providers were seeing thrombosis and clotting in COVID-19 patients as well as more instances of patients with acute ischemia to extremities. The court determined that the health care services provided by OSUWMC to Dr. Samadder, a COVID-19 patient, were a result of or in response to the state of emergency due to COVID-19 and therefore fall within the qualified civil immunity provision of Am.Sub.H.B. No. 606.

{¶ 8}   The Court of Claims also found that Dr. Samadder failed to demonstrate that an exception to immunity applies under Am.Sub.H.B. No. 606(B)(2), namely that OSUWMC's actions constituted a reckless disregard or willful or wanton misconduct. The court determined that Dr. Samadder's complaint only alleged negligence, and the complaint failed to allege that OSUWMC's health care providers exhibited a reckless disregard for the consequences of their actions, so as to affect the life or health of the patient, or that those health care providers exhibited intentional misconduct or willful or wanton misconduct.

{¶ 9}   Dr. Samadder now appeals the Court of Claims' decision on summary judgment.

## II.  ASSIGNMENTS OF ERROR

{¶ 10}  Dr. Samadder argues the following assignments of error:

(1) The trial court erred in finding that OSU Wexner Medical Center sustained its burden of proof to establish immunity under H.B. 606.

(2) The trial court erred by requiring the Samadders to plead an exception to immunity in their Complaint.

## III.  STANDARD OF REVIEW

{¶ 11}  Appellate review of summary judgment is de novo. *Accurate Elec. Constr. v. Ohio State Univ.*, 10th Dist. No. 17AP-211, 2019-Ohio-4992; *Koos v. Cent. Ohio Cellular*,

*Inc.,* 94 Ohio App.3d 579, 588 (8th Dist.1994). In appellate review of summary judgment, we stand in the shoes of the Court of Claims, conduct an independent review of the record, and affirm the Court of Claims' judgment if any of the grounds the movant raised in the Court of Claims supports the court's judgment, even if the Court of Claims failed to consider those grounds. *See Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996); *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 12} Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 65-66 (1978).

## IV. LEGAL ANALYSIS

### A. Assignment of Error No. 1

{¶ 13} In her first assignment of error, Dr. Samadder argues that the Court of Claims erred in finding OSUWMC sustained its burden of proof to establish qualified civil immunity under Am.Sub.H.B. No. 606. Dr. Samadder argues that Am.Sub.H.B. No. 606 limits the liability of health care providers only as to treatment decisions specific to COVID-19 and that the negligence that caused Dr. Samadder's injuries did not occur as a result of treatment for COVID-19. We do not agree.

{¶ 14} We first turn to the language of Am.Sub.H.B. No. 606 to interpret the qualified civil immunity provision of this temporary law. The primary goal of statutory interpretation is to ascertain and give effect to the General Assembly's intent in enacting the statute. *Brooks Capital Servs., L.L.C. v. 5151 Trabue Ltd.*, 10th Dist. No. 12AP-30, 2012 Ohio App. LEXIS 3901 *9 (Sept. 27, 2012), citing *Yonkings v. Wilkinson*, 86 Ohio St.3d 225, 227 (1999). In determining legislative intent, we first look to the plain language of the statute. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 11, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997). A court must "evaluate a statute 'as a whole and giv[e] such interpretation as will give effect to every word and clause in it.' " *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, ¶ 21, quoting

*State ex rel. Myers v. Bd. of Edn. of Rural School Dist. of Spencer Twp.*, 95 Ohio St. 367, 373 (1917).

{¶ 15} As the Court of Claims noted, Am.Sub.H.B. No. 606, as stated in its title, was an act to "make temporary changes related to qualified civil immunity for health care and emergency services provided during a government-declared disaster or emergency and for exposure to or transmission or contraction of certain coronaviruses." Am.Sub.H.B. No. 606(B)(1) states:

> Subject to division (C)(3) of this section, a *health care provider* that provides *health care services, emergency medical services*, first-aid treatment, or other emergency professional care, including the provision of any medication or other medical equipment or product, *as a result of or in response to a disaster or emergency* is not subject to professional disciplinary action and is not liable in damages to any person or government agency in a tort action for injury, death, or loss to person or property that allegedly arises from any of the following:
>
> (a) An act or omission of the health care provider in the health care provider's provision, withholding, or withdrawal of those services;
>
> (b) Any decision related to the provision, withholding, or withdrawal of those services;
>
> (c) Compliance with an executive order or director's order issued during and in response to the disaster or emergency.

(Emphasis added.)

{¶ 16} The parties do not dispute that OSUWMC is a hospital and a health care provider under Am.Sub.H.B. No. 606 1(A)(15) and (20). The parties also do not dispute that OSUWMC, through its employed health care professionals, provided health care services and emergency services to Dr. Samadder under the relevant definitions within Am.Sub.H.B. No. 606 1(A) (19) and (20).

{¶ 17} However, the parties do dispute whether Dr. Samadder's delayed treatment for compartment syndrome, and alleged subsequent injury, was "as a result of or in response to a disaster or emergency" as required for immunity under Am.Sub.H.B. No. 606(B)(1) to apply. Dr. Samadder argues that because the standard of care for

compartment syndrome is the same for COVID patients and non-COVID patients, the care provided was not related to or in response to the COVID-19 health emergency. In other words, she argues the medical negligence at issue was unrelated to Dr. Samadder's COVID-19 diagnosis and treatment.

{¶ 18} However, in our reading of Am.Sub.H.B. No. 606(B)(1), the plain language of the rule conditions its application on whether the healthcare services at issue were provided "as a result of" the COVID-19 pandemic, not whether the standard of care was altered by the pandemic. Dr. Samadder was a critically ill COVID-19 patient at OSUWMC, and the treatment at issue here is inextricably linked to her treatment as a COVID-19 patient. We cannot divorce her treatment at OSUWMC from the pandemic. The evidence in the record indicates that Dr. Samadder was suffering from a life-threatening COVID-19 infection, which necessitated the need for several life-support measures. This included the ECMO and Avalon catheter, which led to the need for the sternotomy. The sternotomy led to Dr. Samadder's subsequent blood clot, which then required a thrombectomy. The thrombectomy led to her developing compartment syndrome and requiring a fasciotomy. All of these conditions and treatments arose from her COVID-19 infection and were all a part of the overarching goal of keeping Dr. Samadder from dying of COVID-19. We agree with the Court of Claims that Dr. Samadder's treatment was a direct result of or in response to COVID-19, and the care and treatment for her arm arose as a direct result of the care for her COVID-19 infection. Accordingly, we overrule Dr. Samadder's first assignment of error.

## B. Assignment of Error No. 2

{¶ 19} In her second assignment of error, Dr. Samadder argues that the Court of Claims erred in its ruling on summary judgment by requiring the Samadders to plead an exception to immunity in their complaint. We agree.

{¶ 20} As discussed above, Am.Sub.H.B. No. 606(B)(1) establishes qualified civil immunity, but Am.Sub.H.B. No. 606 (B)(2) also establishes an exception to that immunity where the health care provider's actions exhibit "reckless disregard" or "intentional misconduct or willful or wanton misconduct." It states:

> Division (B)(1) of this section does not apply in a tort action if the health care provider's action, omission, decision, or compliance constitutes *a reckless disregard for the consequences so as to affect the life or health of the patient or intentional misconduct or willful or wanton misconduct*

on the part of the person against whom the action is brought.

(Emphasis added.)  Am.Sub.H.B. No. 606 (B)(2).

{¶ 21}  The temporary law further defines "reckless disregard" as follows:

[A]s it applies to a given health care provider rendering health care services, emergency medical services, first-aid treatment, or other emergency professional care, conduct by which, with heedless indifference to the consequences, the health care provider disregards a substantial and unjustifiable risk that the health care provider's conduct is likely to cause, at the time those services or that treatment or care were rendered, an unreasonable risk of injury, death, or loss to person or property.

Am.Sub.H.B. No. 606 (A)(42).

{¶ 22}  In responding to OSUWMC's motion for summary judgment, Dr. Samadder had argued that OSUWMC was not entitled to immunity because its alleged failure to timely perform a fasciotomy constituted a reckless disregard of Dr. Samadder's health. Dr. Samadder directed the Court of Claims to the affidavit of Dr. Maseed A. Bade who averred that it was reckless of OSUWMC to not perform a fasciotomy at the time of the thrombectomy.  The Court of Claims, however, noted that Dr. Samadder's complaint did not allege that OSUWMC's health care providers provided medical care with a reckless disregard for the consequences, but instead alleged only negligence on the part of OSUWMC and its employees.

{¶ 23}  The Court of Claims relied on *Munday v. Village of Lincoln Heights*, 1st Dist. No. C-120431, 2013-Ohio-3095, in rejecting Dr. Samadder's argument.  There, the First District Court of Appeals held that a complaint "must contain allegations suggesting malice, bad faith, or wanton or reckless conduct for a plaintiff to raise these issues in opposing the employee's motion for summary judgment based on the immunity found in R.C. 2744.03(A)(6)." *Id.* at ¶ 46.  Applying *Munday*, the Court of Claims reasoned that because Dr. Samadder did not allege that OSUWMC acted with reckless disregard in her complaint that she could not do so in opposing OSUWMC's motion for summary judgment.  The Court of Claims looked to its own analysis in denying OSUWMC's motion for judgment on the pleadings, where it noted that Dr. Samadder's complaint did not allege that OSUWMC's

"health care providers provided medical care with a reckless disregard for the consequences so as to affect [her] life or health, or with intentional, or willful, or wanton misconduct." (Mar. 25, 2022 Decision at 12.)

{¶ 24} Here, we disagree with the Court of Claims. We note that Ohio is a notice-pleading state and that the plaintiff need not prove his or her case at the pleading stage. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-45 (1991). Further, a plaintiff need not affirmatively dispose of the immunity question altogether at the pleading stage. *Fink v. Twentieth Century Homes, Inc.*, 8th Dist. No. 94519, 2010-Ohio-5486, ¶ 29. Requiring a plaintiff to affirmatively demonstrate an exception to immunity at this stage would be tantamount to requiring the plaintiff to overcome a motion for summary judgment at the pleading stage. *Id.* at ¶ 27. Instead, a plaintiff must merely allege a set of facts that, if proven, would plausibly allow for recovery. *Id.* at ¶ 29, citing *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. No. 91893, 2009-Ohio-1094.

{¶ 25} Here, reviewing the Court of Claims' decision on OSUWMC's motion for summary judgment, the question is not whether Dr. Samadder pled allegations in the complaint to disprove that OSUWMC is entitled to immunity under Am.Sub.H.B. No. 606 but, rather, does *the evidence presented to the court* establish OSUWMC's entitlement to immunity as a matter of law. As noted above, a plaintiff is not required to affirmatively demonstrate an exception to immunity at the pleading stage. The Supreme Court of Ohio has stated that

> a plaintiff is not required to prove his or her case at the pleading stage. Very often, the evidence necessary for a plaintiff to prevail is not obtained until the plaintiff is able to discover materials in the defendant's possession. If the plaintiff were required to prove his or her case in the complaint, many valid claims would be dismissed because of the plaintiff's lack of access to relevant evidence.

*York*, 60 Ohio St.3d at 145.

{¶ 26} Here, Dr. Samadder was not required to anticipate and plead around affirmative defenses, such as civil liability immunity under Am.Sub.H.B. No. 606. "Indeed, ' "complaints need not anticipate and attempt to plead around defenses." ' " *Main v. Lima*, 3d Dist. No. 1-14-42, 2015-Ohio-2572, ¶ 13, quoting *Savoy v. Univ. of Akron*, 10th Dist. No. 11AP-183, 2012-Ohio-1962, ¶ 8, quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888

(7th Cir.2004). Further, a motion for summary judgment differs from a motion for judgment on the pleadings, or other motions made before discovery, in what the Court of Claims can consider. "A motion for summary judgment is based on evidence presented to the court and allows consideration of facts beyond the allegations included in the pleadings." *Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, ¶ 13. While OSUWMC points this court to *Munday*, we find this reliance misplaced, as the First District's reasoning was specific to the presumption of political subdivision immunity under R.C. 2744.03, which is not applicable to this case. *Munday* at ¶ 46.

{¶ 27} While the complaint alleges negligence on the part of OSUWMC, it also states that Dr. Samadder "developed compartment syndrome which was not diagnosed until April 27, 2020, at which time she promptly had a fasciotomy. By that time however, Anjana Samadder had suffered irreparable and permanent damage to her left arm rendering it deformed and useless." (Compl. at 2-3.) These allegations could be construed as Dr. Samadder's contention that OSUWMC acted with reckless disregard for the consequences as to affect her life or health. We accordingly sustain Dr. Samadder's second assignment of error and hold that the Court of Claims erred in granting OSUWMC's motion for summary judgment based on its determination that Dr. Samadder's complaint did not plead an exception to immunity under Am.Sub.H.B. No. 606.

{¶ 28} While we reverse the Court of Claims' judgment, we also remand the matter to that court for it to determine whether Dr. Samadder has established through evidence that OSUWMC employees acted with reckless disregard with respect to the delayed fasciotomy treatment for Dr. Samadder's compartment syndrome. Because the Court of Claims determined that Dr. Samadder was required to, but did not raise, recklessness or intentional, willful or wanton misconduct in her complaint, that court has not determined whether the evidence before it supports her contention that OSUWMC's acts or omissions exhibited a reckless disregard for the consequences, so as to preclude application of immunity under Am.Sub.H.B. No. 606.

{¶ 29} Dr. Samadder argued below and points this court to evidence in the record, such as Dr. Maseed A. Bade's affidavit, that OSUWMC acted with reckless disregard for Dr. Samadder by waiting so long to perform a fasciotomy to treat her compartment syndrome. In a deposition, Dr. Mounir Haurani, the OSUWMC physician who performed the

thrombectomy on Dr. Samadder, stated that he would typically consult with a hand surgeon to perform a fasciotomy following the thrombectomy but could not recall that happening in Dr. Samadder's case, and it was not documented in his notes. (Sept. 15, 2023 Def.'s Mot. for Summ. Jgmt, Ex. C, Haurani Dep. at 66-68.) We leave this question, whether OSUWMC's actions or omissions rise to reckless disregard, for the Court of Claims to address.

## V. CONCLUSION

{¶ 30} For these reasons, we overrule Dr. Samadder's first assignment of error, sustain her second assignment of error, and remand this matter to the Court of Claims for further proceedings consistent with this decision and the law.

*Judgment affirmed in part,*
*reversed in part, cause remanded.*

DORRIAN and JAMISON, JJ., concur.

———————————